**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **BEVERLY MYERS** | : | **CIVIL ACTION NO.** |
| | : | **3:02CV1152 (AWT)** |
| **v.** | : | |
| | : | |
| **JOHN LAVERTY AND** | : | |
| **CITY OF HARTFORD, HARTFORD** | : | |
| **PUBLIC SCHOOLS** | : | **JUNE 30, 2004** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

Defendants John Laverty and "City of Hartford, Hartford Public Schools," (the "Defendants") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment. Summary Judgment should enter in favor of the Defendants on all counts of plaintiff's Complaint.

I.      <u>BACKGROUND</u>

Plaintiff, a former teacher in the Hartford Public Schools, has commenced two actions in connection with her employment and the termination of her employment in the Hartford Public Schools. This action was filed first. In this action, Plaintiff seeks damages for alleged race, gender, age and disability discrimination arising out of certain events that are alleged to have occurred in 2001 while she was employed in the Hartford Public Schools. At the time that this action was filed (in July of 2002), Plaintiff was engaged in pre-termination hearings being conducted pursuant to Connecticut General Statutes §10-151. On November 6, 2002,

Plaintiff's employment was terminated by the State Board of Trustees for the Hartford Public Schools ("State Board").  On or about April 3, 2003, Plaintiff commenced another action in order to seek redress for alleged violations of law in the process of the termination of Plaintiff's employment.  That action is pending in front of Judge Dorsey and is encaptioned, <u>Beverly Myers v. City of Hartford, Edna Negron, D. Anwar Al-Ghani, Jim Boucher, Felix Karsky, State Board of Trustees for the City of Hartford, Anthony Amato, Ann Bird, Robert Stacy and the Hartford Board of Education</u>, 3:03CV652 (PCD) ("<u>Myers II</u>").[1]

On or about January 23, 2003, this court, in an endorsement order, dismissed Counts 11 and 12 of the Complaint in this action.  Thereafter, Plaintiff failed to file any amended complaint.  Thus, the operative complaint is the original complaint and the following counts remain:  (1) a claim under 42 U.S.C. §1981; (2) a claim brought under 42 U.S.C. §1983, presumably, an equal protection claim based on race; (3) another claim brought pursuant to 42 U.S.C. §1983, presumably, an equal protection claim based on race and gender; (4) a Title VII race discrimination claim; (5) a race discrimination claim brought pursuant to the Connecticut Fair Employment Practices Act ("CFEPA"); (6) a Title VII claim alleging illegal retaliation for having engaged in protected activities; (7) a CFEPA retaliation claim; (8) an Americans with

_____

[1] In accordance with Judge Dorsey's orders regarding the filing of substantive motions, Defendants have served Plaintiff's counsel with a Motion for Summary Judgment in <u>Myers II</u> and are awaiting any opposition before all papers are filed.  Defendants City of Hartford and Robert Stacy were previously dismissed from that action.

Disabilities Act ("ADA") claim; (9) another ADA claim; and (10) an Age Discrimination in Employment Act ("ADEA") claim.

The facts are set forth in Defendants' Rule 56(a)1 Statement of Facts Not in Dispute.

II.     DISCUSSION

A.     Summary Judgment Standard.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of [his] pleading, but [his] response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In determining when a party has raised a genuine issue of material fact, the Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986) (citations omitted). Indeed, a plaintiff may not get to a jury without "any significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 249 (quoting, First Nat'l Bank of Arizona v. Cities Servs. Co., 391 U.S. 253, 290 (1968)). The moving party's burden may be fulfilled by

"pointing out to the District Court--that there is an absence of evidence to support the

nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

The Second Circuit has stated that the "mere existence of a scintilla of evidence in

support of the [non-movant's] position will be insufficient; there must be evidence on which

the jury could reasonably find for the [non-movant]." Yerdon v. Henry, 91 F.3d 370, 374

(2d Cir. 1996), quoting, Anderson, 477 U.S. at 252; see also, Bickerstaff v. Vassar College, 196

F.3d 435, 448 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) ("An inference is not a

suspicion or guess.  It is a reasoned, logical decision to conclude that a disputed fact exists on

the basis of another fact that is known to exist.").  Further, the Second Circuit has stated that

the non-movant "cannot rely on inadmissible hearsay in opposing a motion for summary

judgment." Burlington Coat Factory Warehouse Corp. v. Espirit de Corp., 769 F.2d 919, 924

(2d Cir. 1985).  Thus, "even in the discrimination context, a plaintiff must provide more than

conclusory allegations of discrimination to defeat a motion for summary judgment." Meiri v.

Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985).  In fact, the plaintiff's

evidence must be precise and specific, and may not be based on conjecture and surmise.

Bickerstaff, 196 F.3d at 451 ("affidavits must be based upon 'concrete particulars,' not

conclusory allegations."); Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir.

1999); see also, McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) (plaintiff's

rationalizations are insufficient to create genuine issues of material fact). In this case, plaintiff has failed to raise a genuine issue of material fact necessitating a trial.

      B.    <u>The Title VII, ADA and ADEA Claims Should Be Dismissed for Failure to Exhaust Administrative Remedies.</u>

The Sixth, Eighth, Ninth and Tenth Counts of the Complaint should be dismissed because Plaintiff has failed to exhaust her administrative remedies by obtaining a Release of Jurisdiction from the U.S. Department of Justice in connection with her Title VII, ADA and ADEA claims. Plaintiff attached to her Complaint a copy of a March 27, 2002 letter from Robert L. Sanders, Area Director for the U.S. Equal Employment Opportunity Commission ("EEOC") which stated in part: "Because the Respondent in this charge is from the public sector, the Notice of Right to Sue must be issued by the U.S. Department of Justice. Therefore, your request has been forwarded to that agency for action."

In their Answers (both at ¶4), the Defendants acknowledged that Plaintiff had filed a timely claim with the CHRO but left her to her proof as to whether she had obtained a Right to Sue letter from the Department of Justice. During discovery, Plaintiff was requested to produce, "All documents relating to any charges or complaints Plaintiff has ever filed with any local, state or federal court or agency, or has ever made on an informal and internal basis to any representative of any company or other organization by which she was or has been employed, in which she has alleged any form of discrimination" and Plaintiff responded that such documents were "Produced." Responses to Defendant Laverty's First Request for Production

of Documents (attached as Exhibit K) at 1.  At this point in time, the undersigned is unaware of any Release of Jurisdiction issued by the U.S. Department of Justice in this case.

Title VII, the ADEA and the ADA all require that a plaintiff exhaust her administrative remedies and obtain a right to sue letter before commencing suit.  42 U.S.C. §2000e-5(e-f); 29 U.S.C. §626; 42 U.S.C. §12117 (adopting Title VII procedures); <u>Legnani v. Alitalia Linee Intaliene, S.P.A.</u>, 274 F.3d 683, 686 (2d Cir. 2001) ("Under both Title VII and the ADEA, a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right to sue letter.  Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court."); <u>Golnik v. Amato</u>, 299 F. Supp. 2d 8, 14 (D. Conn. 2003) (ADA claims brought under Title I require exhaustion of administrative remedies).  In this case, Plaintiff has not produced a Right to Sue letter from the Department of Justice.  Consequently, Plaintiff has not exhausted her administrative remedies with respect to her Title VII, ADA and ADEA claims.

Because she has failed to properly exhaust her administrative remedies, summary judgment should enter in favor of the Defendants on the Sixth, Eighth, Ninth and Tenth counts of the Complaint.

C.     Plaintiff Has Failed to Assert Any Viable Claim of Illegal Discrimination.

All of Plaintiff's remaining claims allege discrimination or retaliation based on an impermissible consideration (race, gender, age, disability or engaging in a protected activity). However, Plaintiff has offered no evidence to suggest that the Defendants were motivated by illegal animus in taking any of their alleged actions.  Therefore, summary judgment should enter in favor of the Defendants on all counts remaining in the Complaint.

Section 1981 claims, Fourteenth Amendment equal protection claims,[2] ADA discrimination claims, ADEA claims and CFEPA claims all borrow Title VII's burden-shifting analysis in cases where there is no direct evidence of discrimination.  Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001) (the McDonnell-Douglas burden shifting framework applies to ADEA claims); Heyman v. Queens Village Committee for Mental Health for Jamaica Community Adolescent Program, Inc., 198 F.3d 68, 72 (2d Cir. 1999) ("In analyzing a discriminatory discharge claim under the ADA, we apply the burden-shifting analysis established by the Supreme Court in McDonnell-Douglas Corp. v. Green, . . . .); Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998) ("In analyzing whether conduct was unlawfully discriminatory for purposes of §1983, we borrow the burden-shifting framework of Title VII claims."); Sioson v. Knights of Columbus, 160 F. Supp. 2d 316, 321 (D. Conn. 2001),

---

[2] It should be noted that a plaintiff may assert both a Title VII claim and a claim pursuant to §1983 (as Plaintiff has done here) as long as the §1983 claim is premised on a federal right, privilege or immunity other than Title VII. Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993), cert. denied, 510 U.S. 7164 (1994).

appeal dismissed, 303 F.3d 458 (2d Cir. 2002) ("The same standard applies to both the CFEPA and Title VII claims brought in this cause of action."); Sedotto v. Borg-Warner Protective Servs. Corp., 94 F. Supp. 2d 251, 268 (D. Conn. 2000) ("It is well-settled that the same legal standards apply to claims under CFEPA as to claims under Title VII and the ADEA."); Okonkwo v. State of Connecticut Dept. of Children & Families, 1999 U.S. Dist. LEXIS 20796 at *10 (D. Conn. 1999) ("A Section 1981 claim based on alleged employment discrimination is evaluated in the same manner as a Title VII claim.").

           1.      There is No Prima Facie Case.

Plaintiff is required to establish a prima facie case of discrimination or retaliation by showing:  (1) that she belongs to a protected class; (2) that she was qualified for the position; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination or retaliation on the basis of membership in that class.  Stern v. Trustees of Columbia University, 131 F.3d 305, 311-12 (2d Cir. 1997); De la Cruz v. New York City Human Resources Admin. Dept. of Social Serv.s, 82 F.3d 16, 20 (2d Cir. 1995).  The burden on the plaintiff at this prima facie stage is low.  Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203-204 (2d Cir. 1995).

For purposes of this motion only, Defendants will concede that Plaintiff belongs to a protected class; that she was qualified to be a teacher by virtue of her holding a teaching certificate; and she suffered an adverse employment action in that she was suspended from her

duties with pay.  The Defendants do not believe that Plaintiff's suspension arose under

circumstances giving rise to an inference of discrimination on the basis of membership in a

protected class.  The record reveals that Plaintiff was suspended for three incidents in which

she was found to have submitted a doctor's note with an altered return to work date, she

admittedly left the school during the school day without permission of the Principal or

Assistant Principal, and encouraged a student to hit another student.  Plaintiff concedes that,

with respect to all three incidents, the Defendants were obligated to investigate the conduct

alleged.  While Plaintiff disagrees with the conclusions reached by Robert Stacy, the then-

Executive Director for Human Resources for the Hartford Public Schools, she has presented no

evidence to suggest that either of the Defendants took any illegal actions against her based on

any of the impermissible criterion that she has alleged.  Thus, Plaintiff has failed to establish a

prima facie case and summary judgment should enter in favor of the Defendants on all

remaining counts of the complaint.

> 2.    Defendants Have Legitimate, Nondiscriminatory Reasons for the Decisions.

In the event that the Court finds that Plaintiff has established her prima facie case, the

burden of production shifts to the Defendants to articulate some legitimate, nondiscriminatory

reason for the adverse employment action.  Farias v. Instructional Systems, Inc., 259 F.3d 91,

98 (2d Cir. 2001).  "The defendant is not required to prove that the articulated reason actually

motivated its actions."  Farias, 259 F.3d at 98.

The Defendants articulate the following legitimate, nondiscriminatory reasons:  Plaintiff was suspended from her position with pay because she was found to have submitted a falsified doctor's note, she admitted leaving the school during the school day without the permission of the Principal or Assistant Principal in violation of school policy, and she was found to have encouraged a student to hit another student.

>    3.    Plaintiff Cannot Produce Evidence Sufficient to Support a Finding of Discrimination.

"If the defendant bears its burden of production the presumption [of discrimination] drops out of the analysis . . . and the defendant 'will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination.'"  Farias, 259 F.3d at 98 (citations omitted).  "Further, [i]f the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale."  Stern, 131 F.3d at 312 (citations omitted).

Evidence sufficient to establish the minimal prima facie case combined with evidence of falsity of the employer's proffered reason for the employment decision may not be sufficient to satisfy the plaintiff's burden.  James v. New York Racing Ass'n., 233 F.3d 149, 155-57 (2d Cir. 2000).  In other words, if Plaintiff can offer proof that Defendants' stated reasons for placing her on paid administrative leave were false, a genuine issue of material fact is not necessarily created.  Indeed, proof of the falsity of a defendant's stated non-discriminatory

reasons does not mean that the true reason was illegal discrimination based on an impermissible consideration.  Thus, the Second Circuit "mandates a case-by-case approach, with a Court examining the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'"  Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2001) (citations omitted).  Thus, "the way to tell whether a plaintiff's case is sufficient to sustain a verdict is to analyze the particular evidence to determine whether it reasonably supports an inference of the facts plaintiff must prove—particularly discrimination."  James, 233 F.3d at 157.[3]  In analyzing that evidence, "a court is not to second-guess the defendant's judgment as long as it is not for a discriminatory reason."  Cunliffe v. Sikorsky Aircraft Corp., 9 F. Supp. 2d 125, 132 (D. Conn. 1998).

In this case, Plaintiff can present no evidence to suggest her paid suspension resulted from any impermissible animus.  Even if the Plaintiff were able to somehow prove that:  (a) she was perfectly justified in submitting the doctor's note with an altered return to work date; (b) she did not violate school policy by admittedly leaving the school during the school day without receiving prior approval from the Principal or Assistant Principal (and dispersing her class to other staff without permission and without adequately informing such other staff that

---

[3] The Second Circuit has determined that the Supreme Court's opinion in Reeves v. Sanderson Plumbing Prod.s, Inc., 530 U.S. 133 (2000) does not overrule and, in fact, is in harmony with, Second Circuit precedent in this area, as set forth in Fisher v. Vassar College, 114 F.3d 1332 (2d Cir. 1997), cert. denied, 522 U.S. 1075 (1998).  James, 233 F.3d at 155-57; Schnabel, 232 F.3d at 89-91.

they would be receiving such students); and (c) both boys involved in the fight lied when they said that Plaintiff told one of the boys to hit the other one if hit first, Plaintiff would still not be entitled to a jury trial on such claims because she has not produced any evidence to suggest that illegal animus motivated the decision to suspend.  Indeed, Plaintiff agrees that a principal faced with the kind of allegations made against Plaintiff would be obligated to investigate such conduct.  Myers I Tr. at 39-40.  If the administration, having undertaken its obligation to investigate, somehow reached the wrong conclusion in its review of each of the three incidents, the Defendants are still entitled to summary judgment because Plaintiff cannot bring forth sufficient circumstantial evidence to create a genuine issue of material fact as to whether the Defendants acted on an impermissible motivation.

Plaintiff appears to rely on the fact that the students protested Plaintiff's return to school to support her claim of illegal animus.  However, Plaintiff has produced absolutely no admissible evidence to suggest that either of the Defendants encouraged the students to protest her return.  Further, there is absolutely no evidence to suggest that the alleged encouragement of the students was based on Plaintiff's race, gender, age, alleged disability or alleged protected activity.  On the contrary, the record reveals that when Mr. Laverty returned from his conference and learned of the student protests (and the suspension of two students for their conduct towards Plaintiff), he made an announcement over the public address system and

visited classrooms to dissuade any further protests.  He further went to Plaintiff and asked her if there was anything else that he could do for her and she replied "no."

Plaintiff identifies her protected activity as "sticking up for [her] rights," but offers no admissible evidence to suggest any connection between any protected activities and her suspension with pay.  Likewise, Plaintiff offers no admissible evidence to suggest a link between her race, gender, age or alleged disability and her suspension with pay.  Therefore, Plaintiff has not produced sufficient evidence to create a genuine issue of material fact concerning any of her illegal discrimination or retaliation claims.  Consequently, summary judgment should enter in favor of the Defendants on all remaining claims in the Complaint.

D.    Plaintiff Has Not Established an Actionable Hostile Work Environment Claim.

The Supreme Court has explained that "in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998); Williams v. County of Westchester, 171 F.3d 98, 100 (2d Cir. 1999) ("In order to recover on a claim of a racially hostile work environment in violation of Title VII, the plaintiff must establish that his workplace was permeated with instances of racially discriminatory conduct such as 'discriminatory intimidation, ridicule and insult [citation omitted] such that the 'environment would reasonably be perceived, and is perceived, as hostile or abusive.'"); Hanson v. Cytec

Industries, 2002 U.S. Dist. LEXIS 6086 at *16 (D. Conn. March 8, 2002) (Plaintiff must show

that "the conduct creating that atmosphere actually constituted discrimination because of

race.").  A hostile work environment exists when "the workplace is permeated with

discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter

the conditions of the victim's employment and create an abusive working environment."  Harris

v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).  In making this determination, courts are

instructed to look at all of the circumstances, including the frequency of the alleged

discriminatory conduct, its severity, whether it was physically threatening or humiliating, or a

mere offensive utterance and whether it reasonably interferes with the employee's work

performance.  Faragher, 524 U.S. at 787-88; Harris, 510 U.S. at 23.  "Simple teasing, offhand

comments and isolated incidents" do not amount to discriminatory changes in the terms and

conditions of employment.  Faragher, 524 U.S. at 788.  "Properly applied, [these standards]

will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the

sporadic use of abusive language, gender-related jokes, and occasional teasing.'"  Id.  In short,

conduct must be extreme as to amount to a change in the terms and conditions of employment.

Id.

In her Complaint, Plaintiff alleges that:  "Upon her return from medical leave, she was

subjected to racist comments from students which, despite her complaints to her superiors,

went uncorrected by Defendant employer, which made the staff by their default a party to the

racism.  In fact, the staff and administration encouraged the students to take action against the

Plaintiff."  Complaint at ¶11.  As stated above, Plaintiff has presented absolutely no admissible

evidence to suggest that Mr. Laverty or any member of the administration encouraged students

to protest Plaintiff's return to school.  On the contrary, when Mr. Laverty returned to school

from a conference and learned that students had protested Plaintiff's return to school, he

attempted to dissuade any further protests by a public address announcement and visits to

classrooms.  There is absolutely no admissible evidence to suggest that the Defendants

encouraged any protests or disrespectful behavior by the students.  Further, the evidence

suggests that students who were disrespectful to Plaintiff were suspended.  Additionally, there

is no evidence to suggest that these student protests were anything more than isolated incidents.

Moreover, it does not appear that any racial insults or epithets were directed to Plaintiff

by the students.[4]  Rather, in her deposition, Plaintiff could not recall the statements made by the

students who were suspended.  Myers I Tr. at 99.  Other students are alleged to have

commented that Plaintiff ate fried chicken in her classroom.  Myers I Tr. at 100.  Objectively,

this statement does not appear to be racist.  Moreover, Plaintiff admits that she ate fried chicken

in her classroom, although she contends that she did not do so while class was in session.

Myers I Tr. at 100-101.  Thus, any potentially negative implications associated with the

statements are washed away by the truth of the statements.  Therefore, such truthful statements,

---

[4] Indeed, Mr. Laverty does not recall any mention of racial slurs or epithets directed against Plaintiff.  Laverty
Aff't. at ¶18.  The racial overtones appear to be a product of litigation.

made by students, could not possibly form the basis of a valid hostile work environment claim. Additionally, Plaintiff has not produced any evidence to suggest that such statements were made by students with enough frequency to constitute a hostile work environment.

Plaintiff's allegations regarding alleged harassment do not rise to the level of conduct required to support a claim of a hostile work environment. The record reveals no conduct by the Defendants that rose to the level of altering Plaintiff's working conditions. As a matter of law, Plaintiff's evidence is simply insufficient to constitute a hostile work environment. As such, summary judgment should enter in favor of the Defendant on any hostile work environment claims.

   E. <u>Plaintiff Has Neither Pled Nor Established a Viable Due Process Claim</u>.

In paragraph 13 of her complaint, Plaintiff alleges that her "due process rights were violated in that the pre-disciplinary hearing, held on June 18, 2001 was predetermined as to outcome, and was carried on in an arbitrary and capricious manner." However, none of the remaining counts of the complaint appear to seek relief for an alleged violation of due process rights. However, in the event that the court finds that Plaintiff has pled a Fourteenth Amendment Due Process claim, such claim should be denied.

To the extent that Plaintiff may have pled a due process claim, it is unclear whether Plaintiff intended to assert a procedural due process claim or a substantive due process claim. The substantive due process clause protects individuals from encroachment on their liberty by

outrageous governmental actions, regardless of the implementing procedures, and requires a plaintiff to establish that the defendant's actions were "arbitrary or conscience-shocking in a constitutional sense."  Sundbye v. Ogunleye, 3 F. Supp. 2d 254, 261 (E.D.N.Y. 1998) (multiple citations omitted).  The "doctrine is to be applied with 'caution and restraint.'"  DeLeon v. Little, 981 F. Supp. 728, 734 (D. Conn. 1997) (citing, Moore v. City of East Cleveland, 431 U.S. 494, 502 (1977)).  Further, the court should be reluctant to "expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended."  Sundbye, 3 F. Supp. 2d at 261.  In paragraph 13, Plaintiff alleges that the pre-disciplinary hearing was conducted in an arbitrary and capricious manner.  However, there is nothing in the record to support such allegation.  Certainly, there is no evidence to suggest gross governmental misconduct so egregious as to call for the employment of the seldom-used substantive due process clause.  Indeed, the record simply suggests that Plaintiff was unhappy that she was unable to persuade the administration to adopt her position.  Nothing in this case suggests outrageous, arbitrary or conscience-shocking governmental behavior.  Thus, any substantive due process claim must fail.

Under the procedural due process clause, "[a]n employee who has a property interest in his employment 'is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story,' before he is subjected to the loss of employment.'"  Munafo v. Metropolitan Transportation Authority, 285

F.3d 201, 212 (2d Cir. 2002) (quoting, Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 546

(1985). Minimum procedural requirements are a matter of federal law. Ciambriello v. County

of Nassau, 292 F.3d 307, 319 (2d Cir. 2002). The "root requirement" of the due process clause

is "that an individual be given an opportunity for a hearing *before* he is deprived of any

significant property interest." Loudermill, 470 U.S. at 542. A pre-disciplinary hearing need

not be "elaborate" and "need not definitively resolve the propriety of the discharge."

Loudermill, 470 U.S. at 545.

        In this case, Plaintiff admits that she was afforded a pre-disciplinary hearing prior to her

suspension. Complaint at ¶13. This is all that the Fourteenth Amendment's procedural due

process clause requires. Moreover, the record establishes that the pre-disciplinary hearing

occurred on June 18, 2001. Complaint at ¶13; Laverty Aff't. at ¶26 and Exhibit 6 thereto. As a

result of information provided by Plaintiff at the hearing, Mr. Dumont instructed Mr.

Karpeichik to undertake additional interviews and to re-interview certain witnesses.

Karpeichik Aff't. at Exhibit 2. Mr. Karpeichik conducted additional interviews on June 21 and

25, 2001. On June 26, 2001, Mr. Stacy wrote to Plaintiff regarding the findings of the pre-

disciplinary hearing. Laverty Aff't. at Exhibit 6. However, rather than impose discipline at

that point in time, he reserved the right "to render disciplinary action in this matter in the near

future," thus allowing Plaintiff additional time to present any further evidence that she wished.

Laverty Aff't. at Exhibit 6. As it turned out, Mr. Stacy did not impose the paid suspension until

his letter of August 31, 2001.  Laverty Aff't. at Exhibit 7.  Plaintiff was provided with a pre-disciplinary hearing; the administration followed up with witnesses identified by Plaintiff in that hearing; and did not impose discipline until September 4, 2001.  The Hartford Public Schools went above and beyond what the procedural due process clause requires in this case.

The procedural due process clause does not require a public employer to change its mind regarding the discipline it intends to impose—it only requires that a hearing be afforded to the public employee.  Because Plaintiff was provided with a pre-disciplinary hearing, Plaintiff cannot produce any evidence to suggest a denial of procedural due process rights in this case.  Accordingly, summary judgment should enter in favor of the Defendants on any due process claims contained in Plaintiff's complaint.

F.    <u>Plaintiff May Not Assert a Section 1981 Claim in this Case</u>.

In the event that summary judgment does not enter in favor of the Defendants for the reasons stated above, Plaintiff's §1981 claim should be dismissed because §1983 is his exclusive remedy.  <u>Burbank v. Office of the Attorney General of the State of Connecticut</u>, 240 F. Supp. 2d 167, 173-176 (D. Conn.), <u>aff'd</u>, 2003 U.S. App. LEXIS 20109 (2d Cir. Sept. 29, 2003).  As Judge Droney wrote in <u>Burbank</u>:

> In Jett v. Dallas Independent School District, the Supreme Court held that "the express 'action at law' provided by §1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws, 'provides the exclusive federal damages remedy for the violation of the rights guaranteed by §1981 when the claim is pressed against a state actor."  491 U.S. 701, 735 (1989); . . .  Some doubt has been cast on Jett's viability by the addition in 1991

of subsection (c) to §1981, which states that "the rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."  42 U.S.C. §1981(c).  However, most courts have held that "'because Congress neither expressed its intent to overrule Jett, nor explicitly created a remedy against state actors in addition to §1983, we are not willing to deviate from the Supreme Court's analysis of §1981 in Jett. This court agrees and concludes that Jett applies to [plaintiff's] claim against [the individual defendant].

240 F. Supp. 2d at 173-74.  Judge Droney also concluded that any §1981 claim was precluded whether the individual defendant was sued in his official or individual capacities or both.  240 F. Supp. 2d at 174-75.

Likewise, in this case, Plaintiff's exclusive right against the state actor Defendants is §1983.  Plaintiff has pled causes of action pursuant to §1983 in the Second and Third Counts of her Complaint.  Therefore, summary judgment should enter in favor of the Defendants on the First Count of the Complaint.

G.    Plaintiff Cannot Establish a Monell Claim.

To the extent that any §1983 claims remain, the "City of Hartford, Hartford Public Schools"[5] is entitled to summary judgment on such claims because Plaintiff cannot establish a policy, custom or practice of discrimination along the lines alleged by Plaintiff.

In 1978, the Supreme Court held that a municipality could be subject to liability under §1983 for the execution of municipal policies or customs created either by the municipality's

---

[5] The caption and ¶8 of the Complaint identify the institutional defendant as the "City of Hartford, Hartford Public Schools."

lawmakers or by "those who edicts or acts may fairly be said to represent official policy . . ."

<u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 694 (1978).

At the same time, however, the Supreme Court held that "a local government may not be sued

under §1983 for an injury inflicted solely by its employees or agents."  <u>Monell</u>, 436 U.S. at

694.  Thus, the Second Circuit has held that in order to hold a municipality liable under 42

U.S.C. §1983, "a plaintiff is required to plead and prove three elements:  (1) an official policy

or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."

<u>Zahra v. Town of Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995) (citations omitted); <u>Batista v.

Rodriguez</u>, 702 F.2d 393, 397 (2d Cir. 1983).  As a result, where a plaintiff fails to present the

Court with any evidence of an official policy, summary judgment is appropriate.  <u>Sagendorf-

Teal v. County of Rensselaer</u>, 100 F.3d 270, 277 (2d Cir. 1996) (summary judgment granted in

favor of defendant county based upon plaintiff's failure to produce any evidence of a county

policy or custom).

      The record reveals that the State Board of Trustees for the Hartford Public Schools (the

"State Board"), during the relevant time, and the reconstituted Hartford Board of Education,

since December 3, 2002 have maintained official policies against illegal discrimination,

retaliation or harassment.  Exhibit 1 to the Affidavit of Webster Brooks.  Moreover, in her

deposition, Plaintiff could only offer opinion, conjecture and rank speculation to support any

claim of an unwritten municipal policy, custom or practice to illegally discriminate against

employees.  See, Myers II Tr. at 61-68 and Exhibit 8 thereto (at Interrogatory 10); Myers I Tr.

at 76-78.  Thus, Plaintiff has not brought forth any evidence to suggest a municipal pattern,

practice or custom of illegal discrimination on the basis of race, gender, age or disability.

Municipal liability may be imposed under §1983 for a single event or single decision by

a municipal policymaker but only where the municipality itself is at fault.  DeLeon, 981 F.

Supp. at 740.  More particularly, a municipality may only be held liable for a single act when

the decision to take the action was made by a decision maker "whose acts or edicts may fairly

be said to represent municipal policy."  Monell, 436 U.S. at 694.  Thus, municipal liability may

attach where the municipal decision maker possesses final policy making authority with respect

to the action ordered.  DeLeon, 981 F. Supp. at 740.  Moreover, "[t]he determination of

whether individual actors hold policymaking authority is a question of law for the judge to

decide."  Soto v. Schembri, 960 F. Supp. 751, 757 n.4 (S.D.N.Y. 1997) (citing, inter alia, Jett v.

Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989)).

In this case, Mr. Laverty clearly does not have final policymaking authority on any

employment matters.  Mr. Laverty is a Principal at a school and all policymaking authority

(and, indeed, all powers), during the time period in question, were reserved to the State Board.

Laverty Aff't. at ¶2; Special Acts 97-4 and 01-7 (Exhibits F and G).  Likewise, Mr. Stacy did

not possess final policy-making authority at the time because such powers were reserved to the

State Board.  Thus, any decisions or actions taken against Plaintiff by Mr. Laverty or Mr. Stacy

could not be said to represent municipal policy. Because Plaintiff has failed to establish a municipal custom, policy or practice of illegal discrimination, summary judgment should enter in favor of the "City of Hartford, Hartford Public Schools" on all §1983 counts in the complaint.

      H.    <u>The City of Hartford is Not a Proper Defendant in this Action</u>.

      The Connecticut General Assembly's passage of Special act 97-4 precludes any liability for the City of Hartford in this matter. As Judge Dorsey recently ruled on a motion to dismiss, in a similar case:

> Recent events foreclose the possibility that the City is a proper party to this action. On April 18, 1997, in response to systematic problems in the public school system, the State of Connecticut dissolved the Hartford Board of Education and transferred all authority to the State Board of Trustees. 1997 Conn. Special Act 4 §§1, 2 (enacted Apr. 18, 1997). As such, '[t]he State Board of Trustees . . . [became] solely responsible for the management of the Hartford school district. <u>Id.</u> §2. As a result the City effectively became a spectator in the administration of the school system. Although the Mayor of Hartford is included as a member of the Board of Trustees, he has no vote in proceedings, <u>id.</u> §3, thus no control. Additionally, none of the remaining members of the Board of Trustees may be 'a relative . . . of any person employed by the Hartford School District or the city of Hartford." <u>Id.</u> The act further requires assignment of all contracts and agreement made on behalf of the Hartford Board of Education to the State Board of Trustees. <u>Id.</u> §4. The Superintendent is elected by vote of the school board members pursuant to Conn. Gen. Stat. §10-157(a), and thus, as a consequence of the Act, is elected by vote of the Board of Trustees. The only involvement the City thus has in the school system as a result of the Act is the fiduciary obligation of providing funding to the school system. <u>See,</u> 1997 Conn. Special Act 4 §§4(d), 6(a).
>
> As such, in the time period involved in the present complaint, the City has been stripped of any control over the administration of the school system and the

State of Connecticut has taken over all aspects of its administration.  Plaintiff therefore argues that the funding provided as ordered by the State subjects it to liability, or the fact that the school rests within its limits requires the same.  The City has no indicia of control in the day-to-day affairs of the HPS, the relevant dates in the complaint fall within the period in which the State assumed control, thus geography alone is offered as the basis for the complaint against the City.  Absent any ability to influence events within the school system, either positively or negatively, the City cannot be held liable for the acts or omissions complained of by plaintiff.  The City is dismissed as a party to the present action.

Lee v. City of Hartford/Hartford Public Schools et al., 289 F. Supp. 2d 25, 27-28 (D. Conn. 2003).  As with the Lee case, Plaintiff alleges that the events at issue in this complaint occurred in calendar year 2001 and, therefore, during the period of time when the State of Connecticut took over the Hartford Public Schools.  Exhibits F and G (establishing that the State Board was "solely responsible for management of the Hartford school district" from June 1, 1997 through December 2, 2002).  Thus, for the reasons expressed in Judge Dorsey's opinion, the City of Hartford could not possibly be liable for any of the actions alleged in the Complaint.

I.    Defendant Laverty Is Not a Proper Defendant in this Action.

1.    The Claims Against Mr. Laverty Should Be Dismissed for Insufficiency of Service of Process.

Mr. Laverty was never served with process in this action and any counts against him should have been dismissed.  See, Laverty Aff't. (Exhibit C) at ¶¶4-5.  On or about September 5, 2002, the undersigned, on behalf of the Defendants, filed a Motion to Dismiss on a variety of grounds, including insufficiency of service of process, pursuant to Rule 12(b)(5), on behalf of

the City of Hartford and Mr. Laverty.  At that point in time, 120 days had not run since the

filing of the complaint and Plaintiff had an opportunity to cure the defective service issues.

Plaintiff took advantage of the remaining service period and served a copy of the Complaint on

the City of Hartford.  <u>See</u>, Exhibit I (the return of service attached to Dkt. #13 in the case file).

However, Plaintiff never served Mr. Laverty with a copy of the Complaint.  On January 23,

2003, in its Endorsement Order, the court stated:  "John Laverty and the City of Hartford also

move to dismiss the complaint for insufficiency of process.  However, service was made on

these defendants within the 120-day time limit period under Federal Rule of Civil Procedure

4(m).  (See Docs. #9 and #13)."

    With all due respect to the court, the court's Endorsement Order was mistaken in its

assertion that Mr. Laverty was served within the 120 time limit.  On the Pacer system, docket

entry #9 states:  "Summons Returned Executed on 7/17/02 as to John Laverty, City of Hartford

individually (Blue, A.) (Entered:  10/01/2002)."  However, the "Return of Service" forms filled

out by Ronald J. Perone indicate only that Milly Ramos, an employee in the labor relations

department of the Hartford Public Schools, was served in hand on July 17, 2002.  <u>See</u>, Exhibit

H hereto (Returns of Service from Dkt. #9).  There is no indication on Dkt. #9 that Mr. Laverty

was ever served in hand or at his abode.  Similarly, in the return of service attached to Dkt. #13,

State Marshal Joseph Antinerella attested that he served "Daniel Carey, Town Clerk and duly

authorized to accept service for the within named defendant CITY OF

HARTFORD/HARTFORD PUBLIC SCHOOLS, in the said Town of HARTFORD, County of

Hartford" on October 4, 2002.  See, Exhibit I (Affidavit of Service attached to Dkt. #13).

Again, there is no indication in Dkt. #13 that John Laverty was ever served with process in

hand or at his abode in this action.  Indeed, based on the undersigned's review of the court file,

there is no evidence in the record to suggest that Mr. Laverty was ever served in hand or at his

abode by an indifferent person.  Moreover, Mr. Laverty has filed an additional affidavit in this

case swearing that:  (a) he was never served in hand or at his abode with the complaint in this

action; and (b) he never authorized anyone employed by or connected with the Hartford Public

Schools to accept service on his behalf.  Laverty Aff't. (Exhibit C) at ¶¶4-5.  Therefore, the

evidence clearly establishes that Mr. Laverty was never properly served in this action.

Plaintiff did not choose to avail herself of Federal Rule of Civil Procedure 4(d)'s waiver

of service provisions.  Rather, Plaintiff attempted to have the complaint served by Connecticut

Judicial Marshal.  In such a case, service is governed by Federal Rule of Civil Procedure 4.

Rule 4(e) allows service to be effected on an individual in a judicial district of the

United States by two means:

1.     pursuant to the law of the state in which the district court is located . . . ; or

2.     by delivering a copy of the summons and of the complaint to the individual
personally or by leaving copies thereof at the individual's dwelling house or
usual place of abode with some person of suitable age and discretion then
residing therein or by delivering a copy of the summons and of the complaint to
an agent authorized by appointment or by law to receive service of process.

Under Connecticut law, service of individuals is governed by Connecticut General Statutes §52-57(a) which states, in part, that "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in the state."[6]

As established above, Mr. Laverty was not served in hand or at his home. Rather, process apparently was left with Milly Ramos, an employee in the central office of the Hartford Public Schools. Under Connecticut law, a "usual place of abode" is "generally recognized as the place where [the individual defendant] is living at the time of service." Plonski v. Halloran, 36 Conn. Supp. 335, 336 (1980). However, leaving legal process at an individual defendant's place of employment is not sufficient to establish abode service. Grayson v. Wofsey, Rosen, Kweskin & Kuriansky, 40 Conn. Supp. 1, 2 (1984) (citing, East Lyme v. Huntington, 22 Conn. Supp. 288 (1961)). Obviously, the central office of the Hartford Public Schools is not Mr.

---

[6] It should be noted that Conn. Gen. Stat. §52-57(b) was recently amended to include the following: "Process in civil actions against the following-described classes of defendants shall be served as follows: . . . (7) against an employee of a town, city or borough in a cause of action arising from the employee's duties or employment, upon the clerk of the town, city or borough, provided two copies of such process shall be served upon the clerk and the clerk shall retain one copy and forward the second to the employee." See, Public Act 03-224 at *8 (attached hereto as Exhibit J). According to West Publishing, Public Act 03-224 was effective as of July 2, 2003. Conn. Gen. Stat. Ann. §52-57. Thus, the service provisions regarding employees of cities, towns and boroughs contained in the current version of §52-57(b)(7) was not effective within 120 days of the filing of the complaint in this action (July 3, 2003) and, thus, is irrelevant. Even if this newly added section of the statute were relevant, it would not pertain to Mr. Laverty since he is an employee of a board of education. See, Laverty Aff't. at ¶2; Conn. Gen. Stat. §151. In §52-57(b), the legislature saw fit to make distinctions between cities, towns and boroughs, school districts and municipal boards. C.G.S. §52-57(b)(1-5). Yet, in addressing municipal employees, it only allowed service, via the town clerk, against employees of cities, towns and boroughs as opposed to employees of school districts or boards of education. The bottom line in this case is that Plaintiff was required to make service in hand or at Mr. Laverty's abode and failed to do so. Thus, the action must be dismissed as to Mr. Laverty.

Laverty's abode.[7]  Thus, service of Mr. Laverty has not been accomplished pursuant to Connecticut law.

Likewise, the provisions of Federal Rule of Civil Procedure 4(e)(2) have not been satisfied.  As under Connecticut law, Rule 4(e)(2) allows service to be accomplished by service of process at "the individual's dwelling house or usual place of abode" or by delivering process to an agent authorized by appointment or by law to receive service of process.  There is no authority to support the proposition that the federal definition of "usual place of abode" differs so widely from the Connecticut definition so as to encompass the Hartford Public Schools' central office.  Thus, abode service has not been accomplished under federal law.  Likewise, process was not served on an authorized agent of defendant Laverty, such as a guardian or personal agent for service.  Indeed, Mr. Laverty has not specifically authorized anyone to waive or accept service of this action on his behalf.  Laverty Affidavit at ¶6.  Thus, as of this time, defendant Laverty has not been served with this action and any claims remaining against him should be dismissed.

2.    <u>Defendant Laverty is Entitled to Qualified Immunity</u>.

Summary judgment should enter in favor of Defendant Laverty because he is qualifiedly immune from liability.  To the extent that Plaintiff has articulated a §1983 claim, Defendant Laverty has not violated any clearly established right belonging to Plaintiff.

---

[7] Indeed, the central office of the Hartford Public Schools is not even Mr. Laverty's workplace.  Rather, he is the Principal at Batchelder School, 757 New Britain Avenue in Hartford.  Laverty Aff't. at ¶2.

Qualified immunity protects government officials in their individual capacities when they are performing discretionary functions and when their conduct does not violate clearly established federal statutory or Constitutional rights of which a reasonable person would have known at the time in question.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Indeed, qualified immunity is an "entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal [immunity] question."  Behrens v. Pelletier, 516 U.S. 299, 306 (1996); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  In order to protect this entitlement, district courts are obligated to exercise their discretion to protect the substance of the qualified immunity defense.  Crawford-El v. Britton, 523 U.S. 574, 598 (1998).

"A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was 'objectively reasonable[] . . . in light of the legal rules that were clearly established at the time it was taken.'"  Munafo v. Metropolitan Transportation Authority, 285 F.3d 201, 210 (2d Cir. 2002) (multiple citations and internal citations omitted).  "The issue of 'whether the plaintiff has asserted a violation of a constitutional right at all' is a 'purely legal question.'"  Munafo, 285 F.3d at 211 (quoting, Siegert v. Gilley, 500 U.S. 226, 232 (1998)).

29

In determining whether a right is clearly established for these purposes, "[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free School Dist., 187 F.3d 272, 278 (2d Cir. 1999).  Thus, the Second Circuit has stated, "[t]he unlawfulness must be apparent." Id.  Moreover, district courts have been admonished to avoid defining the constitutional right at issue too broadly. Lewis v. Cowen, 165 F.3d 154, 166-67 (2d Cir. 1999), cert. denied, 528 U.S. 823 (1999) ("The relevant inquiry is not whether the defendants should have known that there was a federal right, in the abstract, to 'freedom of speech,' but whether the defendants should have known that the specific actions complained of violated the plaintiff's freedom of speech.").

In this case, Plaintiff alleges that students uttered racial epithets against her.  Complaint at ¶11.  She further alleges, but cannot establish, that such utterances "went uncorrected by Defendant employer . . . ."  Complaint at ¶11.  To the contrary, the record establishes that:  Mr. Laverty was only present at school until 11:30 a.m. on the day that Plaintiff returned (Monday, April 9, 2002) and was working on other matters until he left for a conference in Boston; upon his return from the conference, on Thursday, April 12, 2002, Mr. Laverty learned that some students had protested Plaintiff's return to school and that some students had been suspended for being disrespectful to Plaintiff; Mr. Laverty made an announcement over the public address system informing students that stickers or signs should be removed by students and that they

should maintain proper classroom decorum; he visited classrooms to dissuade any further protests; and he visited Plaintiff's classroom and asked her if there was anything that he could do for her and she responded, "no." Laverty Aff't. (Exhibit C); Myers I Tr. at 106, 108. Mr. Laverty strongly denies encouraging students to protest Plaintiff or to be disrespectful towards her and Plaintiff has not produced any admissible evidence to contradict such denial.

Further, the record reveals that: the Hartford Public Schools' Human Resources department (and not Mr. Laverty) initiated an investigation into the alteration of Plaintiff's return to work note from her doctor; the then-Executive Director for Human Resources, Robert Stacy, suspended Plaintiff from her duties with pay effective September 4, 2001; Mr. Laverty did not discipline teachers for serious issues of teacher misconduct—the Human Resources department handled such matters; on May 12, 2001, Plaintiff signed out of Batchelder School at 12:55 p.m. to attend an unscheduled physical therapy session without permission of the Principal or Assistant Principal, in violation of school policy, and without seeking permission to distribute her students to other staff members; Mr. Laverty referred the matter to the Human Resources department and requested an investigation; Mr. Laverty requested that Human Resources department commence an investigation regarding statements made by two students and relatives of at least one student that Plaintiff instructed one student to hit another if struck first; Mr. Karpeichik, an employee of the Human Resources department, conducted interviews in connection with such investigations. Further, Plaintiff concedes that any school principal,

faced with the allegations made against Plaintiff, would be obligated to have such matters investigated.  Myers I Tr. at 39-40.  Finally, Mr. Laverty evaluated Plaintiff's performance during the 2000-2001 school year as "unsatisfactory" based on his own observations and the observations of the Chair of the Social Studies department for the Hartford Public Schools, made specific findings in the evaluation and forwarded a copy of the evaluation to the Executive Director of Human Resources for consideration of termination in accordance with his understanding of the Superintendent's policies.

In her Complaint (at ¶13), Plaintiff admits that she received a pre-disciplinary hearing but that the result of such hearing was pre-determined.  The record reveals that Mr. Dumont of the Human Resources Department conducted such hearing.  Laverty Aff't. at ¶¶26-27 and Exhibit 6 thereto (specifying that Frank Dumont, Labor Relations Manager conducted such hearing).  Thus, Mr. Laverty could not have conducted the hearing in an arbitrary or capricious manner.

Based on this record, Mr. Laverty is entitled to qualified immunity for at least two reasons:  (a) Plaintiff has not made out a constitutional claim against Mr. Laverty; and (b) it was objectively reasonable for Mr. Laverty to believe that his actions did not violate Plaintiff's clearly established rights.

As stated above, the Defendants contend that Plaintiff has failed to create a genuine issue of material fact necessitating a trial of any §1983 claim in this case against either

Defendant.  However, additionally, any §1983 claim against Mr. Laverty must fail for lack of proximate cause. The Second Circuit has explained:

> Civil actions brought under §1983 are analogous to state common law tort actions, serving primarily the tort objective of compensation.  A §1983 action, like its state tort analogs, employs the principle of proximate causation. Although proximate causation in the §1983 context is a question of federal law, in determining the meaning of the concept we look to those state court analogs, because the Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under §1983.

Barnes v. Anderson, 202 F.3d 150, 158 (2d Cir. 1999) (multiple citations and quotation marks omitted).  Thus, in order to prevail on a §1983 claim against a person, the plaintiff is required to prove that the defendant caused the deprivation of his or her rights.  Taylor v. Brentwood Union Free School Dist., 143 F.3d 679, 686 (2d Cir. 1998), cert. denied, 525 U.S. 1139 (1999). "The Supreme Court consistently has refused to impose §1983 liability upon defendants where the causal connection between their conduct and the constitutional injury is remote rather than direct."  Taylor, 143 F.3d at 686.  "Although a §1983 claim has been described as a species of tort liability, . . . it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute."  Id., (quoting, Martinez v. California, 444 U.S. 277, 285, 100 S. Ct. 553 (1980)).

As indicated above, several events superseded any causal connection between Mr. Laverty's actions and Plaintiff's discipline.  Most notably, all of the investigations that led to Plaintiff's suspension were conducted by the Human Resources department.  Further, the

exercise of independent judgment by Mr. Stacy and/or Mr. Dumont severed any causal connection between Mr. Laverty's actions and any adverse employment action sustained by Plaintiff.  See, Taylor, 143 F.3d at 687 ("Specifically, we believe that the independent investigations of the incidents involving [two students] and the other events culminating in the decision of the disciplinary hearing panel to suspend Taylor constitute a superseding cause of Rooney's injury, breaking the causal link between any racial animus Rooney may have had and the suspension.").  Because there is no causal connection between Mr. Laverty's actions and Plaintiff's alleged constitutional injury, Plaintiff cannot make out a constitutional claim against Mr. Laverty and, consequently, Mr. Laverty is entitled to the protections of qualified immunity.

Second, on this record, there can be no doubt that it was objectively reasonable for Mr. Laverty to believe that his actions did not violate any clearly established rights belonging to Plaintiff.  He initiated two of the three investigations regarding Plaintiff's conduct that led to her suspension.  He did this by requesting investigations by the Human Resources department. Even Plaintiff concedes that he was obligated to do so in such circumstances.  Myers I Tr. at 39-40.  Indeed, it would have been unreasonable for Mr. Laverty not to request such investigations.  Therefore, Mr. Laverty is entitled to qualified immunity on all claims asserted under §§1981-1983.[8]

---

[8] See, Gyadu v. Frankl, 62 F. Supp. 2d 590, 593 (D. Conn. 1999) (finding qualified immunity with respect to a §1981 claim).

Finally, none of the remaining causes of action allow for individual liability.  <u>See</u>, <u>Tomka v. Seiler Corp.</u>, 66 F.3d 1295, 1313-17 (2d Cir. 1995) (no individual liability under Title VII); <u>Diggs v. Town of Manchester</u>, 303 F. Supp. 2d 163, 175 (D. Conn. 2004) (no individual liability under the ADA); <u>Lee v. City of Hartford</u>, 289 F. Supp. 2d 25, 28 (D. Conn. 2003) (no individual liability under ADEA); <u>Alungbe v. Bd. of Trustees</u>, 283 F. Supp. 2d 674, 686-687 (D. Conn. 2003) (<u>citing</u>, <u>Perodeau v. City of Hartford</u>, 259 Conn. 729, 744 (2002) (no individual liability under CFEPA, Conn. Gen. Stat. §46a-60(a)(1))).  Therefore, summary judgment should enter in favor of Defendant Laverty on all remaining counts of the Complaint.

III.    <u>CONCLUSION</u>

For the foregoing reasons, summary judgment should be granted in favor of Defendants on all remaining counts of the Complaint.

DEFENDANTS,
JOHN LAVERTY AND CITY OF HARTFORD,
HARTFORD PUBLIC SCHOOLS


By_____
      Joseph W. McQuade, ct12121
      Diana Garfield, ct05551
      Kainen, Escalera & McHale, P.C.
      21 Oak Street, Suite 601
      Hartford, CT  06106
      Telephone (860) 493-0870
      Facsimile (860) 493-0871
      jmcquade@kemlaw.com
      dgarfield@kemlaw.com
      Their Attorneys


## CERTIFICATE OF SERVICE

The undersigned certifies that on this 30th day of June, 2004, a copy of the foregoing

Memorandum of Law in Support of Defendants' Motion for Summary Judgment was mailed

via U.S. Mail, first-class, postage prepaid to:

      Francis A. Miniter, Esq.
      Christine E. Corriveau, Esq.
      Miniter & Associates
      100 Wells Street, Suite 1D
      Hartford, CT  06103


      _____
          Joseph W. McQuade

14523