UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **BEVERLY MYERS** | : | CIVIL ACTION NO. |
| | : | 3:02CV1152 (AWT) |
| v. | : | |
| | : | |
| **JOHN LAVERTY AND** | : | |
| **CITY OF HARTFORD, HARTFORD** | : | |
| **PUBLIC SCHOOLS** | : | JUNE 30, 2004 |

## RULE 56(a)(1) STATEMENT OF UNDISPUTED FACTS

The following facts, annotated to the record, are not in dispute:

1. Plaintiff, Beverly Myers, was a teacher with the Hartford Public School system starting in about 1974 and in 1980 she became a full-time teacher. At the time of her termination, she had achieved tenure under Connecticut law. Transcript of the February 19, 2004 Deposition of Beverly Myers ("Myers I Tr."), relevant portions of which are attached hereto as Exhibit A, at 35-36.

2. John Laverty was the Principal at Batchelder School at all times relevant to this action. Myers I Tr. at 32; Affidavit of John Laverty, attached hereto as Exhibit C at ¶2.

3. Plaintiff is suing Mr. Laverty based on the actions he took as Principal of Batchelder School. Myers I Tr. at 33-35.

4. In 1997, the Connecticut Legislature passed Special Act 97-4 which, inter alia, dissolved the Hartford Board of Education effective June 1, 1997 and legislated that "[t]he

State Board of Trustees for the Hartford Public Schools . . . shall be solely responsible for the management of the Hartford school district." Special Act 97-4(2); <u>see also</u>, Special Act 97-4(4)(a)(1), attached hereto as Exhibit F.

5.      The State Board of Trustees for the Hartford Public Schools ("State Board") managed the Hartford School District through December 2, 2002. <u>See,</u> Special Act 01-7(2)(B), attached hereto as Exhibit G.

6.      Plaintiff has two lawsuits pending: one involving alleged discrimination while she was employed as a teacher; and one involving the termination of her employment. Myers I Tr. at 10-11; Transcript of the March 10, 2004 Deposition of Beverly Myers, relevant portions of which are attached hereto as Exhibit B ("Myers II Tr.") at 30-32.

7.      In or around 1995, Plaintiff was alleged to have pushed a student and wrapped a phone cord around the student's neck. Such complaint was investigated by someone other than Mr. Laverty. Plaintiff complained that Mr. Laverty should have gone to Plaintiff first. Myers I Tr. at 80. Plaintiff was exonerated of such charges. Myers I Tr. at 81.

8.      However, Plaintiff's grievance over the matter went to arbitration and a single arbitrator denied the grievance and found: "The record also supports the claim that Myers was not truthful in her response to Laverty during that meeting when he asked her if she had obtained any statements from students, an appropriate question given the fact that Vargas had made that claim" and "I conclude, therefore, that the grievant's testimony lacks a high degree

of credibility" and Myers' "'cover-up' efforts did constitute a breach of the teacher's responsibility serious enough to justify the three weeks suspension penalty." Exhibit L; see also, Myers I Tr. at 81 (acknowledging the 15 days suspension based on the finding that she attempted to influence students to write false reports).

   9. Since at least 1999, Mr. Laverty has referred instances of serious teacher misconduct to the Hartford Public Schools' Human Resources department, often by filling out an "Unusual Incident Report" form, and requesting further action and/or investigation. Laverty Aff't. at ¶¶7, 9.

   10. Since at least 1999, Mr. Laverty has not suspended a teacher nor terminated their employment. Rather, the Hartford Public Schools' Human Resources department has handled such functions. Laverty Aff't. at 8.

   11. From November of 2000 until April 9, 2001, Plaintiff was out of work as a result of two surgeries. Complaint at 10.

   12. Plaintiff returned to work on April 9, 2001. Complaint at ¶10; Laverty Aff't. at ¶14.

The Altered Doctor's Note

   13. Plaintiff returned to work pursuant to a doctor's note on which the return to work date was altered from April 5, 2001 to April 9, 2001 by someone. Myers I Tr. at 72, 91-95.

14. Plaintiff claims that she told the doctor's secretary that she believed that there was no school on April 5 and the secretary allegedly whited out the 5th and changed the date to the 9th. Myers I Tr. at 92-95; Laverty Aff't. at Exhibit 1.

15. A pre-disciplinary hearing was held in connection with this note and, to the knowledge of Plaintiff, Frank Dumont of the Human Resources Department spoke to the doctor's nurse/secretary. Myers I Tr. at 96.

16. Mr. Laverty did not initiate a complaint or investigation of this incident. He believes that the Human Resources department identified the discrepancy in the doctor's note. Laverty Aff't. at ¶¶11-13. Plaintiff acknowledges that Mr. Laverty did not conduct the pre-disciplinary hearing. Myers I Tr. at 72-73.

17. The conclusion of the pre-disciplinary hearing on this issue was that Plaintiff was unauthorized to submit the altered doctor's note. Myers I Tr. at 96.

<u>The Students' Protests of Plaintiff's Return to the Classroom</u>

18. When Plaintiff returned from medical leave on April 9, 2001, several of the students in her classes protested her return to the classroom by various means. Laverty Aff't. at 15 & Exhibit 2 thereto; <u>see also</u>, Myers I Tr. at 72.

19. A student made Plaintiff aware of a petition opposing Plaintiff's return that was circulating among the students. Myers I Tr. at 98-99.

20. On April 9, 2001, two students were suspended for making disrespectful comments to Plaintiff. However, Plaintiff does not recall what the students allegedly said. Myers I Tr. at 99; see also, Laverty Aff't. at Exhibit 2 thereto.

21. On April 10, 2001, students made comments about Plaintiff eating fried chicken in class. Myers I Tr. at 100.

22. Plaintiff admits that she ate fried chicken in her classroom, but denies doing so while class was in session. Myers I Tr. at 100 – 101.

23. Plaintiff admits talking on the phone during the administration of Connecticut mastery tests, allegedly because the phone rang. Myers I Tr. at 101.

24. On April 10, 2001, several students wore yellow badges to Plaintiff's classroom stating: "We want Mr. Clemens back." Myers I Tr. at 103 – 104. Mr. Clemens was a substitute teacher who had taught Plaintiff's classes in her absence. Myers I Tr. at 97; see also, Laverty Aff't. at Exhibit 2 thereto.

25. Plaintiff told the students that they could not enter the classroom while wearing such badges. Myers I Tr. at 104.

26. Ms. Hunter, the Assistant Principal, came to Plaintiff's classroom and told the students to remove the badges. Myers I Tr. at 105.

27. On April 9, 2001, Mr. Laverty was at Batchelder School working on other matters until 11:30 a.m., when he left for a conference in Boston. Laverty Aff't. at ¶14 & Exhibit 2 thereto.

28. Upon his return to school on Thursday, April 12, 2001, Mr. Laverty was made aware of the student protests and suspensions. Laverty Aff't. at ¶15 & Exhibit 2 thereto.

29. On April 12, 2001, Mr. Laverty attempted to dissuade any further protests by making an announcement over the public address system and visiting classrooms. Myers I Tr. at 105 – 106; Laverty Aff't at ¶16 & Exhibit 2 thereto.

30. Mr. Laverty visited Plaintiff's classroom after his return from the conference and asked Plaintiff if there was anything that he could do for her and Plaintiff replied, "No." Myers I Tr. at 106, 108.

<u>The May 2, 2001 Unauthorized Absence</u>

31. Plaintiff was aware that she was required to report to work by 8:12 a.m. each school day and that she was required to gain permission from the Principal or Assistant Principal prior to leaving school during the workday. Myers I Tr. at 112-113 & Exhibit 9 thereto.

32. On May 2, 2001, Mr. Laverty had observed Plaintiff's classroom in the morning. Myers I Tr. at 113.

33. After Mr. Laverty observed Plaintiff's classroom in the morning, Plaintiff allegedly developed pain in her arm and sought physical therapy. Myers I Tr. at 113-14.

34. Plaintiff testified that the Assistant Principal, Ms. Hunter, was "not there." Myers I Tr. at 114.

35. Plaintiff did not obtain the permission of Mr. Laverty to leave the school. Laverty Aff't. at ¶19; Myers I Tr. at 113-114.

36. Plaintiff signed out of Batchelder School at 12:55 p.m. on May 2, 2001 without the permission of either the Principal or the Assistant Principal. Laverty Aff't. at ¶19 & Exhibit 3 thereto.

37. Plaintiff claims that she placed all of her students under the supervision of other school staff or gave the students passes prior to leaving the building. Myers I Tr. at 116-120.

38. However, Plaintiff admits that she did not tell one of the staff members, Ms. Allison, that day that students would be coming to her room during that time period. Myers I Tr. at 119-120.

39. Plaintiff agrees that there should be an investigation if a teacher leaves a class without supervision. Myers I Tr. at 120.

The Fighting Incident

40. In May of 2001, a fight occurred at Batchelder School between two boys. Laverty Aff't. at ¶21-22.

41.     Both boys involved in the fight reported that Plaintiff had told one of the boys that if the other hit him again, he should hit back.  Laverty Aff't. at ¶22 & Exhibit 4 thereto.

42.     Relatives of at least one of the boys came to the school and reported that Plaintiff had, earlier in the week, told one of the boys to hit the other boy if hit first.  Laverty Aff't. at ¶22 & Exhibit 4 thereto.

43.     Plaintiff denied the allegations.  Laverty Aff't. at ¶23; <u>see </u>also, Myers I Tr. at 121-122.

44.     Given the seriousness of the allegations and Plaintiff's denial of such allegations, Mr. Laverty referred the matter to Human Resources for investigation.  Laverty Aff't. at ¶23 & Exhibit 5 thereto.

<u>The 2000-2001 Evaluation</u>

45.     Mr. Laverty evaluated Plaintiff's performance during the 2000-2001 school year as "unsatisfactory."  Laverty Aff't. at ¶24. & Exhibit 5 thereto.

46.     This evaluation was based, in part, on classroom observations by both Mr. Laverty and Ilene Lowenstein, the Chair of the Social Studies department for the Hartford Public Schools.  Laverty Aff't. at Exhibit 5 thereto.

47.     Based on Superintendent Amato's stated priorities and the Human Resources department's preference to be notified of any unsatisfactory evaluations, Mr. Laverty

forwarded a copy of Plaintiff's evaluation to Robert Stacy, then-Executive Director for Human Resources for the Hartford Public Schools. Laverty Aff't. at ¶¶24-25 & Exhibit 5 thereto.

48.     Plaintiff filed grievances over several of her evaluations. Myers I Tr. at 43-45.

The Investigation & Pre-Disciplinary Hearing

49.     In or around May of 2001, Frank Dumont, then-Labor Relations Manager for the Hartford Public Schools, asked Thomas Karpeichik, a Human Resources department employee, to investigate a series of complaints filed by or against Plaintiff. June 29, 2004 Affidavit of Thomas Karpeichik ("Karpeichik Aff't."), attached hereto as Exhibit D, at ¶4.

50.     Mr. Karpeichik interviewed Plaintiff, an eighth grade student, Keith Kendal (a security officer) and Mr. Laverty on May 24, 2001. He interviewed Assistant Principal Hunter on May 29, 2001. He put his summarizations of these interviews in a memo to Mr. Dumont on or about June 11, 2001. Karpeichik Aff't. at ¶5 & Exhibit 1 thereto.

51.     On June 18, 2001, Plaintiff's pre-disciplinary hearing was held. Mr. Dumont conducted the hearing and Mr. Laverty was present. Complaint at ¶13; Laverty Aff't. at ¶26 & Exhibit 6 thereto.

52.     On that same day, Mr. Dumont wrote a memo to Mr. Karpeichik instructing him to interview several witnesses, based on names that Plaintiff had provided to him, and to follow up on additional witnesses based on Mr. Dumont's conversation with a student. Karpeichik Aff't. at ¶6 & Exhibit 2 thereto.

53. On June 21, 2001, Mr. Karpeichik interviewed six students, Crystal Simpson (a teacher) Millie Cancel (a paraprofessional). On June 25, 2001, Mr. Karpeichik re-interviewed Ms. Simpson and Assistant Principal Hunter and interviewed one student. Mr. Karpeichik memorialized these interviews in a memo to Mr. Dumont dated June 27, 2001. Karpeichik Aff't. at ¶7 & Exhibit 3 thereto.

54. On June 26, 2001, Mr. Stacy wrote to Plaintiff regarding the findings arising out of the June 18, 2001 pre-disciplinary hearings and concluded that her "actions were grossly inappropriate, unprofessional and conduct unbecoming an employee of the Hartford Public Schools." Laverty Aff't. at ¶27 & Exhibit 6.

Plaintiff's Suspension

55. On August 27, 2001, Mr. Stacy wrote to Plaintiff and informed her that she was being placed on paid suspension effective September 4, 2001 pending disciplinary action. Myers I Tr. at 73; Laverty Aff't. at ¶28 & Exhibit 7 thereto.

56. Plaintiff agrees that she was placed on administrative leave after three separate investigations concerning: (a) her submission of the altered doctor's note; (b) leaving school without permission and her class not properly supervised; and (c) her involvement in a fight between two male students. Myers I Tr. at 73-74.

57. Plaintiff agrees that the charges against her in 2001 were serious enough that Mr. Laverty had to refer them for investigations. Myers I Tr. at 123-127.

58.     Plaintiff agrees that a principal of a school is obligated to investigate: a complaint brought by a student that a teacher pushed the student; a claim that a teacher tried to pressure students to file false statements; a claim that a teacher told one student to hit another student; and a claim that a teacher altered a doctor's note when returning to work from leave; and a claim that a teacher left a school building without prior approval and left her class unsupervised. Myers I Tr. at 39-40.

Plaintiff's Termination

59.     In a letter dated November 20, 2001, Superintendent Amato notified Plaintiff that termination of her employment was under consideration. Myers II Tr. at 33 & Exhibit 3 thereto.

60.     On November 6, 2002, the State Board accepted the Superintendent's recommendation to terminate plaintiff's employment. Minutes of the November 6, 2002 meeting of the State Board of Trustees for the Hartford Public Schools at p. 6, Item 31, attached as Exhibit 2 to the Brooks Aff't. (Exhibit E).

Plaintiff's Evidence Regarding Policies, Practices & Customs of the HPS

61.     Plaintiff is unaware of any written policy of discriminating against minorities. Myers I Tr. at 75.

62.     Plaintiff agrees that Mr. Laverty cannot make policy for the Hartford Public Schools. Myers I Tr. at 76.

63.     The State Board, at all relevant times, and the reconstituted Hartford Board of Education, from December 3, 2002 to the present, have maintained policies prohibiting illegal discrimination, retaliation and harassment.  See, Myers I Tr. at 75; Brooks Aff't. at ¶¶5-6 & Exhibit 1 thereto.

Plaintiff's "Evidence" of Discrimination

64.     Although Plaintiff identified others who were allegedly discriminated against by the Hartford Public Schools, she has no knowledge regarding the circumstances of any actions taken against them and can only speculate that they were illegally discriminated against.  Myers I Tr. at 77-78.

65.     Plaintiff was never denied a promotion and was never demoted during her employment in the HPS.  Myers II Tr. at 62-64.

66.     Plaintiff identified the "protected activities" for which she was allegedly retaliated against as "sticking up for [her] rights."  Myers I Tr. at 63-64.

67.     It is plaintiff's "opinion" that black female employees of the HPS were "targeted" for adverse action.  Myers II Tr. at 61-62.

68.     Plaintiff does not recall Mr. Laverty making racist comments or derogatory comments about older people.  Myers I Tr. at 55-56.

69.     The Vice Principal of Batchelder School, Deloris Hunter, is a woman.  Myers I Tr. at 57.

70. Plaintiff believes that she was given a more difficult class than other teachers because she is a woman. However, she concedes that she could have gotten a more difficult class because she was viewed as the most competent teacher. Myers I Tr. at 59-60.

71. Plaintiff has no particularized knowledge about other "targeted" employees and "assumes" they were discriminated against. Myers II Tr. at 64-68 & Exhibit 8 thereto at Interrogatory 10; Myers I Tr. at 76-78.

72. Plaintiff identified her alleged disability as "surgery" on her foot. Myers I Tr. at 66.

Miscellaneous

73. To date, Plaintiff has not produced a Release of Jurisdiction from the U.S. Department of Justice. Cf., Attachment to complaint (EEOC letter) with Exhibit K at Request 1.

74. Mr. Laverty was never served with process in this action in hand or at his abode. The only attempted service of process over Mr. Laverty was an indifferent person leaving process with an employee of the Hartford Public Schools' central office who was not authorized to accept service on behalf of Mr. Laverty. Laverty Aff't. at 4-5; Exhibits H & I.

                    DEFENDANTS,
                    JOHN LAVERTY AND CITY OF HARTFORD,
                    HARTFORD PUBLIC SCHOOLS

By_____
        Joseph W. McQuade, ct12121
        Diana Garfield, ct05551
        Kainen, Escalera & McHale, P.C.
        21 Oak Street, Suite 601
        Hartford, CT  06106
        Telephone (860) 493-0870
        Facsimile (860) 493-0871
        jmcquade@kemlaw.com
        dgarfield@kemlaw.com
        Their Attorneys

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 30th day of June, 2004, a copy of the foregoing Defendants' Rule 56(a)1 Statement of Facts Not in Dispute was mailed via U.S. Mail, first-class, postage prepaid to:

    Francis A. Miniter, Esq.
    Christine E. Corriveau, Esq.
    Miniter & Associates
    100 Wells Street, Suite 1D
    Hartford, CT  06103

                                    _____
                                        Joseph W. McQuade

14484