UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BEVERLY MYERS | ) | |
|     Plaintiff | ) | Civ. Act. No: 3:02CV1152 |
| | ) | |
| VS. | ) | |
| | ) | |
| JOHN LAVERTY and | ) | |
| CITY OF HARTFORD, HARTFORD | ) | |
| PUBLIC SCHOOLS | ) | SEPTEMBER 21, 2004 |
|     Defendant | | |

**RULE 56(A)(2) STATEMENT**

1. Admitted

2. Admitted

3. Admitted

4. Admitted

5. Admitted

6. Admitted

7. Admitted

8. Admitted

9. Admitted

10. Admitted. However, Laverty makes the decision whether an investigation should be made. See Affidavit of Laverty, Exhibit 5.

11. Admitted

12. Admitted

13. Admitted that the note was altered, but denied "by someone." The Plaintiff has identified who altered the Doctor's note, the Doctor's secretary/nurse, Ms. Rios. See Myers Transcript 92.

14. Admitted

15. Admitted

16. Admitted

17. Admitted

18. Admitted

19. Admitted

20. Admitted, but denied that they were both suspended on April 9th. See Affidavit of Laverty Exhibit 2.

21. Admitted

22. Admitted

23. Admitted

24. Admitted

25. Admitted

26. Admitted

27. Admitted

28. Admitted, but Laverty had been informed before that date. See Affidavit of Myers ¶ 14f.

29. Admitted

30. Admitted

31. Admitted

32. Admitted

33. Admitted

34. Admitted. See also Affidavit of Laverty Exhibit 3 that Vice Principal Hunter was "absent."

35. Admitted, but Laverty could not be located by the school office. See Myers Tr. p. 115.

36. Admitted

37. Admitted

38. Admitted

39. Admitted

40. Admitted

41. Admitted insofar as the boys reported that they were told they should hit back.

42. Admitted

43. Admitted

44. Admitted

45. Admitted, but this was an evaluation conducted after being back at school for a short period of time after a long absence. See Affidavit of Myers ¶10j

46. Admitted

47. Admitted

48. Admitted

49. Admitted

50. Admitted

51. Admitted

52. Admitted

53. Admitted

54. Admitted

55. Admitted

56. Admitted

57. Admitted

58. Admitted

59. Admitted

60. Denied. The State Board moved to pass over Item 31. See Affidavit of Myers ¶15.

61. Admitted

62. Admitted

63. Admitted

64. Admitted

65. Admitted

66. Admitted

67. Admitted

68. Admitted

69. Admitted

70. Admitted

71. Admitted

72. Admitted

73. Denied. See Affidavit of Christine E. Corriveau Exhibit 1.

74. Admitted

## STATEMENTS OF MATERIAL FACTS

1. The Plaintiff had been employed as a teacher by the Hartford Public Schools for approximately 27 years. (Affidavit of Beverly Myers ¶2) Ms. Myers behaved as a professional at all times and is a very experienced teacher. (Affidavit of Taquilaya ¶9)

2. On or about November , 2000, the Plaintiff underwent surgery for pilaneal cysts. (Affidavit of Beverly Myers ¶4) On February 2, 2001, the Plaintiff underwent additional surgery on her hand. (Affidavit of Beverly Myers ¶4) The surgeries required the Plaintiff to be out of work for approximately 5 months, from November, 2000 to April 9, 2001. (Affidavit of Beverly Myers ¶4)

3. After Plaintiff's return to work, she required special accommodations because she was unable to walk comfortably or climb stairs. (Affidavit of Beverly Myers ¶4) She also requested time off for physical therapy for her hand. These accommodations were not made.(Affidavit of Beverly Myers ¶4) Mr. Laverty should have accommodated Ms. Myers while she was attempting to work under a doctor's care. (Affidavit of Taquilaya ¶8)

4. Upon her return from medical leave, she was subjected to racist comments from students which, despite her complaints to her superiors, went uncorrected by Defendant employer, which made the staff by their default a party to the racism. (Affidavit of Beverly Myers ¶5)

5. In fact, the staff and administration encouraged the students to take action against the Plaintiff. (Affidavit of Beverly Myers ¶5)

6. Upon Plaintiff's return from medical leave, Plaintiff was unjustly accused and unjustly disciplined three several occasions. Plaintiff was falsely accused of changing the date of return on a doctor's note, or leaving her students unattended when she had to attend a physical

therapy appointment, and of encouraging two students to fight. (Affidavit of Beverly Myers ¶7) These false accusations lead to placing the Plaintiff on administrative leave and the beginning of termination proceedings.(Affidavit of Beverly Myers ¶7)

7. the Plaintiff was placed on administrative leave from her employment on or about August 27, 2001. (Affidavit of Beverly Myers ¶28) The motive for such action was based on race, age gender or medical disability or a combination of the four.

8. The manner in which the Plaintiff was placed on administrative leave was designed to humiliate and degrade her. Her replacement was notified three weeks in advance of the start of school. (Affidavit of Beverly Myers ¶9)

9. However, Ms. Myers was not told that she was being replaced. (Affidavit of Beverly Myers ¶9) Her name was still on the roster for her to sign in. When she came into the building, Mr. Laverty turned red and went to make a phone call. (Affidavit of Beverly Myers ¶9) He did not speak to her. (Affidavit of Beverly Myers ¶9)

10. When the Plaintiff went to the staff room, Ms. Simpson informed her, in the presence of other teachers, that she had been replaced. (Affidavit of Beverly Myers ¶9)

11. Plaintiff alleges that the following are examples of the racial discrimination that she was subjected to:

a. Plaintiff was disciplined more often than white teachers. For example, several white teachers had been more tardy than the Plaintiff, yet she was singled out and described as having the worst tardiness record. (Affidavit of Beverly Myers ¶10a; Affidavit of Taquilaya ¶7)

b. Plaintiff was subjected to a harsher work load. White teachers did not have to cover classes, but Plaintiff was forced to cover other teacher's classes and charged with insubordination if she declined to do so. Also, out of the three 8th grade homerooms, Plaintiff

was assigned the homeroom with the most students and the most male students with behavioral problems two years in a row.  (Affidavit of Beverly Myers ¶10b)

      c.  Laverty treated Plaintiff's students differently from white teachers' students.  For example, if the Plaintiff's students were studying the library, Mr. Laverty would ask them who their teacher was.  If they answered "Ms.Myers," he would issue a pass and send the students back out of the library.  White teacher's students were allowed to stay in the library. (Affidavit of Beverly Myers ¶10c) The office staff also treated the Plaintiff's students differently.  For example, when the Plaintiff sent one of her students to the office for pencils, Barbara Dejesus, the Executive Secretary, asked the student who the pencils were for.  When the student replied that they were for the Plaintiff, the Ms. DeJesus sighed "Doesn't she ever sleep?" and refused to give the pencils to the student.   (Affidavit of Beverly Myers ¶10c)

      d.  White male teachers were treated differently than Plaintiff.  For example, Plaintiff was subjected to numerous disciplinary actions based on unfounded allegations.(Affidavit of Beverly Myers ¶10d)  Parents made complaints against Joe Horvath, the while male English teacher, for yelling at the students and the parents wanted to meet with him on June 4, 2002.  (Affidavit of Beverly Myers ¶10d) The Hartford Courant actually paid a visit to the school to cover this.(Affidavit of Beverly Myers ¶10d) However, Laverty covered up the situation to protect Horvath.(Affidavit of Beverly Myers ¶10d)

      e.  The School administration supported the petition against the Plaintiff returning to work. (Affidavit of Beverly Myers ¶10e)

      f.  When parents made complaints about the Plaintiff, Laverty would set up meetings with the parents and then not inform the Plaintiff what the meeting was about in order for the

Plaintiff to be unprepared. Laverty would fully inform all white teachers of the nature of the meetings with the parents. (Affidavit of Beverly Myers ¶10f)

  g. Laverty would come in and out of the Plaintiff's classroom to check on her and her whereabouts. Laverty did not check up on white teachers. (Affidavit of Beverly Myers ¶10g)

  h. The office staff would take down the sign in sheet before the Plaintiff had the opportunity to sign it. Ms. Hunter, the Vice Principal regularly allowed white teachers to sign in after the sheet was taken down or the administrative staff would sign the teachers in. (Affidavit of Beverly Myers ¶10h)

  i. Some teachers would sign in on the wrong place and would consistently sign in late. Some of the teachers should have been fired due to their serious tardiness and attendance records. While Laverty never made is an it an issue for other teachers, he applied undue scrutiny when monitoring the Plaintiff's attendance. (See Affidavit of Taquilaya ¶7)

  j. White teachers, such as Mr. Horvath and Nora, were regularly allowed to leave school grounds during school hours. Plaintiff was not allowed to leave school grounds. (Affidavit of Beverly Myers ¶10i)

  k. Laverty unfairly evaluated the Plaintiff while giving good evaluations to white teachers. After the Plaintiff had been out of work for 5 months due to her medical condition, two weeks later, Laverty did an evaluation of the Plaintiff. (Affidavit of Beverly Myers ¶10j) Laverty chose the class with the most problem kids to observe in an effort to give Plaintiff a poor evaluation. (Affidavit of Beverly Myers ¶10j) On information and belief, other white teachers such as Joe Horvath who were underperforming as teachers were given outstanding evaluations. (Affidavit of Beverly Myers ¶10j)

l. Mr. Laverty improperly discussed the Plaintiff with other teachers and attempted to have the other teachers keep an eye on her and monitor her behavior on his behalf. (Affidavit of Taquilaya ¶10) His behavior created a hostile environment and allowed the staff to act in an unprofessional manner to Ms. Myers. (Affidavit of Taquilaya ¶11) He scrutinized the Plaintiff unfairly and encouraged the staff to do the same. (Affidavit of Taquilaya ¶11)

m. Plaintiff believes that she was subjected to gender discrimination because male teachers were given preferential treatment, in that they were assigned better students and have fewer problem students, they were treated with more respect. (Affidavit of Beverly Myers ¶11) For example, the Science Teacher, Dane, had 14 students and Mr. Terranova had 16. (Affidavit of Beverly Myers ¶11) The Plaintiff was assigned 24 students. (Affidavit of Beverly Myers ¶11)

n. Laverty did not check up on the male teachers as he checked up on Plaintiff, and male teachers were not hassled for their tardiness. (Affidavit of Beverly Myers ¶11)

o. The Plaintiff believes that she was subjected to disability discrimination in that she was not accommodated for her disability. For example, Plaintiff was to be allowed to use the elevator during fire drills, but a majority of the time, the elevators were not working. (Affidavit of Beverly Myers ¶12a)

p. Plaintiff was supposed to be given a wheelchair to accommodate her, but she was not given one. (Affidavit of Beverly Myers ¶12b) Nor does she recall the note from Mr. Laverty (Exhibit 6 to Deposition of Beverly Myers) purporting to inform Ms. Myers to contact the nurse to order a wheel chair. (Affidavit of Beverly Myers ¶12b) In addition, the nurse never contacted her regarding a wheelchair. (Affidavit of Beverly Myers ¶12b)

  q. Her doctor told the Plaintiff that she should be assigned an assistant to aid her in her classroom, but an assistant was not assigned. (Affidavit of Beverly Myers ¶12c) A teacher or security guard was supposed to be assigned to escort the Plaintiff's students to and from her classroom, since she was unable to do it, but a majority of the time, no escort was provided. (Affidavit of Beverly Myers ¶12d)

  r. The Plaintiff was harassed about the date on her doctor's note regarding her return to work. (Affidavit of Beverly Myers ¶12e)

  s. Plaintiff was disciplined because she did not attend a meeting regarding her ability to return to work.(Affidavit of Beverly Myers ¶12f)

  12. During the hearings held on May 13 and 14, June 10, 24 and 26, July 15 and September 13, all in the year 2002. (Affidavit of Taquilaya ¶2) the State Board of Trustees presented evidence that was incomplete, inaccurate and in some cases shown to be perjured. (Affidavit of Beverly Myers ¶14) For example, the following issues were addressed at the hearings:

 a) Tardiness issue was dropped because proven inaccurate because of statistics, known to John Laverty, who perjured himself over the tardiness issue and then recanted on the stand stating that he knew which teachers were regularly more tardy;(Affidavit of Beverly Myers ¶14a)

 b) Performance evaluation issues regarding incompetency were dropped because proven not only untrue but deliberately forced into a very short period of time directly following Plaintiff's return from medical leave; (Affidavit of Beverly Myers ¶14b)

 c) Witness Kathy Murphy said that the Plaintiff's students were in the hallway without supervision on May 2nd at 4th Period, and that it could only have been at that date and time, but

Plaintiff proved that her class was being evaluated at that very time on that day by John Laverty with her students all present in her classroom; (Affidavit of Beverly Myers ¶14c)

  d) Rhonda Niles testified that she didn't speak to the Plaintiff all year but there was proof that she had spoken to the Plaintiff after Plaintiff sent her a gift after her mother had died; (Affidavit of Beverly Myers ¶14d)

  e) Laverty testified that Dorothy Carrigan had a problem working with Plaintiff but Carrigan testified that she had no problem working with the Plaintiff but that she wanted to chair the social studies program and the Plaintiff intimidated her because she knew more about social studies; (Affidavit of Beverly Myers ¶14e)

  f) Laverty testified that he did not know about the petition that students circulated regarding the Plaintiff until the Thursday morning after Plaintiff returned from medical leave, but Miss Marisol, a paraprofessional, testified that she had spoken to Laverty about it at about 2:30 or 3:00 pm, on the Friday before Plaintiff returned to school and before Laverty left for Boston (Affidavit of Beverly Myers ¶14f)

  13. The Board of Education was compelled by the Panel to drop one of its charges during the cross-examination of its first witness.(Affidavit of Taquilaya ¶5; Affidavit of Beverly Myers ¶15)

  14. On July 15, the panel unanimously required the Superintendent to withdraw the main charge against the Plaintiff, namely that she should be dismissed based on a negative evaluation of her in May of 2001.  (Affidavit of Beverly Myers ¶15; Affidavit of Taqualaya ¶5.)

  15. At the time of the hearing on September 13, 2002, the Board had presented about nine (9) witnesses and had failed to prove anything against Ms. Myers.  (Affidavit of Beverly Myers ¶15; Affidavit of Taquilaya ¶6)

16. There were numerous inconsistencies with Mr. Laverty's testimony. For example, Mr. Laverty did not treat all the teachers in the same way. (Affidavit of Taquilaya ¶7)

17. Some teachers would sign in on the wrong place in the sign in sheet or consistently sign in late. According to the testimony, some of the teachers should have been fired due to their serious tardiness and attendance records. (Affidavit of Taquilaya ¶7) While Mr. Laverty never made an issue of it for other teachers, he applied undue scrutiny when monitoring Ms. Myers' attendance. (Affidavit of Taquilaya ¶7)

        THE PLAINTIFF

        By_____
        Christine E. Corriveau, her attorney
        Francis A. Miniter, her attorney
        Miniter & Associates
        100 Wells Street Unit 1-D
        Hartford, CT 06103
        860-560-2590 ct21212/ct09566

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed to the following counsel of record this ____ day of September, 2004:

Joseph W. McQuade, Esq.
Diana Garfield, Esq.
Kainan Escalera & McHale, PC
21 Oak Street Suite 601
Hartford, CT 06106

        _____
        Christine E. Corriveau