UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BEVERLY MYERS )<br>    Plaintiff )<br>) | Civ. Act. No: 3:02cv 1152 (AWT) |
| VS. ) | |
| JOHN LAVERTY and )<br>CITY OF HARTFORD, HARTFORD )<br>PUBLIC SCHOOLS )<br>    Defendant | SEPTEMBER 21, 2004 |

STATE OF CONNECTICUT
                          Ss: Hartford
COUNTY OF HARTFORD

**AFFIDAVIT OF BEVERLY MYERS**

The undersigned, being over the age of eighteen years and believing in the obligations of an oath, and being duly deposed, hereby make affidavit and state:

1.  I am an African-American woman, over the age of 50 and had a disability at the time I was placed on administrative leave.

2.  I was employed as a teacher by the Hartford Public Schools for approximately 27 years. I was in the top salary bracket for my position.

3.  Defendant John Laverty was the Principal of Batchelder School in the Hartford Public School System.

4.  On or about November, 2000, I underwent surgery for pilaneal cysts. On February 2, 2001, I underwent additional surgery on my hand. The surgeries required me to be out of work for approximately 5 months, from November, 2000 to April 9, 2001. After my return to work, I required special accommodations because I was unable to walk comfortably or

climb stairs.  I also requested time off for physical therapy for my hand.  These accommodations were not made.

     5.     Upon my return from medical leave, I was subjected to racist comments from students which, despite my complaints to my superiors, went uncorrected by Defendant employer.  In fact, the staff and administration encouraged the students to take action against me.

     6.     Upon my return from medical leave, I was unjustly accused and unjustly disciplined on several occasions.   I was falsely accused of changing the date of return on a doctor's note, of leaving my students unattended when I had to attend a physical therapy appointment, and of encouraging two students to fight. These false accusations lead to placing me on administrative leave and the beginning of termination proceedings.

     7.     I did not leave my students unattended to go to a physical therapy session.  I asked several teachers to watch some of my students.  I sent some of the students to work on an art project, and I sent others to the library.  Before leaving for my appointment, I attempted to inform both Mr. Laverty and Ms. Hunter, the Vice Principal, that I needed to leave for therapy due to the pain I was experiencing.  I was informed that Ms. Hunter had taken the day off from school.  I requested that Mr. Laverty be informed, but I was told by the Executive Secretary Barbara DeJesus that he couldn't be found.

     8.     I believe my due process rights were violated in that the pre-disciplinary hearing, held on June 18, 2001, was predetermined as to outcome, and was carried on in an arbitrary and capricious manner.    I was placed on administrative leave from my employment on or about August 27, 2001.  The motive for such action was based on race, age gender or medical disability or a combination of the four.

9. The manner in which I was placed on administrative leave was designed to humiliate and degrade me. My replacement was notified three weeks in advance of the start of school. However, I was not told that I was being replaced. My name was still on the roster for me to sign in. When I came into the building, Mr. Laverty turned red and went to make a phone call. He did not speak to me. When I went to the staff room, Ms. Simpson informed me, in the presence of other teachers, that I had been replaced.

10. The following are examples of the racial discrimination that I was subjected to:

a. I was disciplined more often than white teachers. For example, several white teachers had been more tardy than I was, yet I was singled out and described as having the worst tardiness record.

b. I was subjected to a harsher work load. White teachers did not have to cover classes, but I was forced to cover other teacher's classes and charged with insubordination if I declined to do so. Also, out of the three 8th grade homerooms, I was assigned the homeroom with the most students and the most male students with behavioral problems two years in a row.

c. Laverty treated my students differently from white teachers' students. For example, if my students were studying the library, Mr. Laverty would ask them who their teacher was. If they answered "Ms.Myers," he would issue a pass and send my students back out of the library. White teacher's students were allowed to stay in the library. The office staff also treated my students differently and would refuse to give them supplies for me. For example, when I sent one of my students to the office for pencils, Barbara DeJesus, the Executive Secretary asked the student who the pencils were for. When the student replied that they were for me, the Ms. DeJesus sighed "Doesn't she ever sleep?" and refused to give the pencils to the student.

  d. White male teachers were treated differently than I was. For example, I was subjected to numerous disciplinary actions based on unfounded allegations. Parents made complaints against Joe Horvath, the white male English teacher, for yelling at the students and they wanted to meet with him on June 4, 2002. The Hartford Courant actually paid a visit to the school to cover this. However, Laverty covered up the situation to protect Horvath.

  e. The School administration supported the petition against me returning to work.

  f. When parents made complaints about me, Laverty would set up meetings with the parents and then not inform me what the meeting was about in order for me to be unprepared. Laverty would fully inform all white teachers of the nature of the meetings with the parents.

  g. Laverty would come in and out of my classroom to check on me and my whereabouts. Laverty did not check up on white teachers.

  h. The office staff would take down the sign in sheet before I had the opportunity to sign it. Ms. Hunter, the Vice Principal regularly allowed white teachers to sign in after the sheet was taken down or the administrative staff would sign the teachers in.

  i. White teachers were regularly allowed to leave school grounds during school hours. For example, Mr. Horvath and the Special Education Teacher, Nora Bernhardt, would go to Dunkin Donuts to get coffee several times during the course of each day. I was not allowed to leave school grounds.

  j. Laverty unfairly evaluated me while giving good evaluations to white teachers. After I had been out of work for 5 months due to my medical condition, two weeks later, Laverty did an evaluation of me. Laverty chose the class with the most problem kids to observe in an effort to give me a poor evaluation. On information and belief, other white teachers such as Joe Horvath who were underperforming as teachers were given outstanding evaluations.

11. I believe that I was subjected to gender discrimination because male teachers were given preferential treatment, in that they were assigned better students and have fewer problem students, and they were treated with more respect. For example, the Science Teacher, Dave Butler, had 14 students and Mr. Joe Terranova had 16. I was assigned 24 students. Laverty did not check up on the male teachers as he checked up on me, and male teachers were not hassled for their tardiness.

12. I believe that I was subjected to disability discrimination in that I was not accommodated for my disability:

a. I was to be allowed to use the elevator during fire drills, but a majority of the time, the elevators were not working.

b. I was supposed to be given a wheelchair to accommodate me, but I was not given one. Nor do I recall the note from Mr. Laverty (Exhibit 6 to Deposition of Beverly Myers) purporting to inform me to contact the nurse to order a wheel chair. In addition, the nurse never contacted me to provide the wheelchair.

c. Additionally, my doctor said that I should be assigned an assistant to aid me in my classroom, but an assistant was not assigned.

d. A teacher or security guard was supposed to be assigned to escort my students to and from my classroom, especially during fire drills, since I was unable to do it, but a majority of the time, no escort was provided.

e. I was harassed about the date on my doctor's note regarding my return to work. The Doctor had originally put down a return date of April 5th, but because the school calendar had that date darkened, I believed there was no school. After explaining this to the secretary, Ms. Rios, she changed the date to Monday April 9th and returned the note to me.

  f. I was disciplined because I did not attend a meeting regarding my ability to return to work.

  13. In or about early September, 2001, the City of Hartford and the State Board Trustees informed me in writing of their intent to terminate me pursuant to the provisions of Connecticut General Statute ("C.G.S.") §10-151b(b), which provides in relevant part for a trial of the termination request before either a single arbitrator selected by the Board of Education, or by a three member panel, with one arbitrator selected by the teacher, one selected by the Board of Education, and a third person selected neutrally. I elected a three member panel, and appointed Nukilwa Taquilaya. The City of Hartford appointed John W. Romanow. Mark L. Irvings was neutrally chosen and was the Chairperson of the panel.

  14. Hearings were held on May 13 and 14, June 10, 24 and 26, July 15 and September 13, all in the year 2002. During such hearings, The State Board of Trustees presented evidence that was incomplete, inaccurate and in some cases shown to be perjured. For example, the following issues were addressed at the hearings:

 a) The tardiness issue was dropped because proven inaccurate because of statistics, known to John Laverty, who perjured himself over the tardiness issue and then recanted on the stand stating that he knew which teachers were regularly more tardy;

 b) The performance evaluation issues regarding incompetency were dropped because proven not only untrue but deliberately forced into a very short period of time directly following my return from medical leave;

 c) Witness Kathy Murphy said that my students were in the hallway without supervision on May 2nd at 4th Period, and that it could only have been at that date and time, but I proved that

my class was being evaluated at that very time on that day by John Laverty with my students all present in my classroom;

    d) Rhonda Niles testified that she didn't speak to me all year but there was proof that she had spoken to me after I sent her a gift after her mother had passed away;

    e) Laverty testified that Dorothy Carrigan had a problem working with me but Carrigan testified that she had no problem working with me but that she wanted to chair the Social Studies program and I intimidated her because I knew more about Social Studies than she did;

    f) Laverty testified that he did not know about the petition that students circulated about me until the Thursday morning after I returned from medical leave, but Miss Marisol, a paraprofessional, testified that she had spoken to Laverty about it at about 2:30 or 3:00 pm, on the Friday before I returned to school and before Laverty left for Boston on June 6, 2001.

    15.    The Board of Education was compelled by the Panel to drop one of its charges during the cross-examination of its first witness. On July 15, the panel unanimously required the Superintendent to withdraw the main charge against me, namely that I should be dismissed based on a negative evaluation of me in May of 2001. At the time of the hearing on September 13, 2002, the Board had presented about nine (9) witnesses and had failed to prove anything against me. Because of procedural issues not relevant here, the hearings were discontinued before a decision was rendered by the panel. Ultimately, the issue of my termination ("Item 31") came before the State Board of Trustees, who voted to pass over the decision in the open forum but later met in secret to terminate me on November 6, 2001.

    16.    Mr. Laverty is the Principal at Batchelder School. As a Principal, he has the duty to report "unusual incidents" to Human Resources. In my opinion and belief, Mr. Laverty

reports such "unusual incidents" in an inconsistent manner, designed to focus discipline on older African American female teachers.

  Dated at Hartford, Connecticut this ____ day of September, 2004.

                  _____
                  Beverly Myers

Subscribed and sworn to before me this ___ day of August, 2004.

                  _____
                  Christine E. Corriveau