**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **BEVERLY MYERS** | : | **CIVIL ACTION NO.** |
| | : | **3:02CV1152 (AWT)** |
| v. | : | |
| | : | |
| **JOHN LAVERTY AND** | : | |
| **CITY OF HARTFORD, HARTFORD** | : | |
| **PUBLIC SCHOOLS** | : | **OCTOBER 15, 2004** |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Defendants John Laverty and "City of Hartford, Hartford Public Schools," (the "Defendants") respectfully submit this brief in reply to Plaintiff's Objection (and Memorandum of Law) to Defendants' Motion for Summary Judgment ("Opposition").

In opposing the Motion for Summary Judgment, Plaintiff relies heavily upon her affidavit and on the affidavit of Nukilwa Taquilaya.[1] See e.g., Opposition at 2-9. However, these affidavits should be ignored because they suffer from a lack of "concrete particulars" and, instead, are based on conclusory allegations and supposition. Bickerstaff v. Vassar College, 196 F.3d 435, 451 (2d Cir. Cir.1999), cert. denied, 530 U.S. 1242 (2000) ("We have previously held

---

[1] Mr. Taquilaya was the arbitrator selected by Plaintiff to represent her interests in the arbitration over the termination of Plaintiff's employment. Thus, Mr. Taquilaya's knowledge is limited to the events of the hearing, which is the subject of Myers v. City of Hartford et al., 3:03CV652 (PCD) ("Myers II") and not this case. The court should be aware that Mr. Taquilaya has an interest in the outcome of this case. Under Connecticut General Statutes §10-151(d), Plaintiff was responsible for payment of the fees of her arbitrator, as well as one-half of the fees of the neutral arbitrator. As of the time of his deposition in Myers II, Mr. Taquilaya had not submitted a bill to Plaintiff for his fees because he felt that she was not in a position to pay. January 20, 2004 Deposition of Nukilwa Taquilaya, relevant portions of which are attached hereto as Exhibit M, at 12, 16-18. At some point in the future, when Plaintiff is in a position to pay, Mr. Taquilaya plans to submit a bill to Plaintiff for his services. Taquilaya Tr. at 19. Prior to being asked to serve as an arbitrator, Mr. Taquilaya had a personal friendship, as well as a professional relationship, with Plaintiff. Taquilaya Tr. at 13. Prior to serving on the arbitration panel hearing Plaintiff's case, Mr. Taquilaya had never served as an arbitrator in a §10-151 teacher termination proceeding. Taquilaya Tr. at 14.

that affidavits must be based upon 'concrete particulars,' not conclusory allegations."). In Bickerstaff, a denial of tenure case, the plaintiff had offered, in opposition to a summary judgment motion, an affidavit of a professor [Mamiya] who was involved in the process of reviewing the plaintiff for promotion. 196 F.3d at 451. In his affidavit, Mamiya "opined that Bickerstaff 'is in every way qualified for the promotion to Full Professor of Africana Studies and the Department of Education according to promotion criteria as outlined in the Faculty Handbook." The affidavit went on to state that: "It is my opinion that the reason Joyce Bickerstaff was turned down for promotion to full professor is on account of race and the prejudice against her based on attitudes about African Americans at Vassar." 196 F.3d at 451. The Second Circuit stated: "The problem with Mamiya's affidavit is that it contains no 'concrete particulars.' While his affidavit informs us that he has known Bickerstaff for more than 20 years as a colleague in the Africana Studies Program at Vassar, Mamiya fails to offer a single act, statement, or admission by any Vassar decision maker or decision making entity--or by anyone else at Vassar for that matter--to support his allegation that Bickerstaff was denied promotion to full professor because of her race. Thus, the district court properly disregarded Mamiya's allegations of race animus as conclusory." Id.

The operative passages in the affidavits submitted by Plaintiff in her Opposition are similarly lacking in concrete particulars. In his affidavit, Mr. Taquilaya offers the following:

> 5.    During the course of six hearings, numerous witnesses were questioned. The testimony went well for Mrs. Myers. . . .
>
> 6.    Furthermore, despite the presentation of numerous witnesses by the Superintendent, no conduct warranting dismissal had been testified to by any

witness. There was no evidence of insubordinate behavior warranting the Plaintiff's dismissal. In fact, there was no evidence of any behavior by Ms. Myers that would bring attention to her unless someone was scrutinizing her behavior.

7. There were numerous inconsistencies with Mr. Laverty's testimony. For example, Mr. Laverty did not treat all the teachers in the same way. Some teachers would sign in on the wrong place in the sign in sheet or consistently sign in late. According to the testimony, some of the teachers should have been fired due to their serious tardiness and attendance records. While Mr. Laverty never made an issue of it for other teachers, he applied undue scrutiny when monitoring Ms. Myers' attendance.

8. According to the testimony, Mr. Laverty was aware of Ms. Myers medical condition and that she was under a doctor's care. Mr. Laverty should have accommodated Ms. Myers while she was attempting to work under a doctor's care.

9. According to testimony, Ms. Myers behaved as a professional at all times and was very experienced as a teacher.

10. There was evidence at the hearing that Mr. Laverty improperly discussed the Plaintiff with other teachers and attempted to have the other teachers keep an eye on her and monitor her behavior on his behalf.

11. Mr. Laverty's behavior created a hostile work environment and allowed the staff to act in an unprofessional manner to Ms. Myers. He appeared to scrutinize Ms. Myers unfairly and encouraged the staff to do the same.

While Mr. Taquilaya's affidavit mentions "the testimony" and "evidence at the hearing," Plaintiff has not offered any of the "testimony" or "evidence" from the hearing in opposition to the motion for summary judgment. Rather, the Taquilaya affidavit can only offer the opinions of a biased observer of an incomplete presentation of evidence in a teacher termination arbitration.[2]

---

[2] The proceedings of the arbitration panel were terminated based on Plaintiff's failure to pre-pay her full share of the neutral arbitrator's fees. September 30, 2002 Letter from Mark L. Irvings, Esq. To Thomas Ritter, Chairman of the State Board of Trustees for the Hartford Public Schools, a copy of which is attached hereto as Exhibit N.

As with Mamiya's affidavit in <u>Bickerstaff</u>, Mr. Taquilaya's affidavit is lacking in "concrete particulars" and contains no admissible evidence to support Plaintiff's contention that she was illegally discriminated against while she was teaching at Batchelder School.

Plaintiff's self-serving affidavit is also slim on "concrete particulars." For example, in connection with her attempt to provide evidence of the alleged racial discrimination, Plaintiff states:

> 10a. I was disciplined more often than white teachers. For example, several white teachers had been more tardy than I was, yet I was singled out and described as having the worst tardiness record.
>
> b. I was subjected to a harsher workload. White teachers did not have to cover classes, but I was forced to cover other teacher's classes and charged with insubordination if I declined to do so. Also, out of the three 8th grade homerooms, I was assigned the homeroom with the most students and the most male students with behavioral problems two years in a row.
>
> c. Laverty treated my students differently from white teachers' students. For example, if my students were studying the library, Mr. Laverty would ask them who their teacher was. If they answered "Ms. Myers," he would issue a pass and send my students back out of the library. White teacher's students were allowed to stay in the library. The office staff also treated my students differently and would refuse to give them supplies for me. For example, when I sent one of my students to the office for pencils, Barbara DeJesus, the Executive Secretary asked the students who the pencils were for. When the student replied that they were for me, the Ms. DeJesus sighed, "Doesn't she ever sleep?" and refused to give the pencils to the student.
>
> d. White male teachers were treated differently than I was. For example, I was subjected to numerous disciplinary actions based on unfounded allegations. Parents made complaints against Joe Horvath, the while male English teacher, for yelling at the students and they wanted to meet with him on June 4, 2002. The Hartford Courant actually paid a visit to the school to cover this. However, Laverty covered up the situation to protect Horvath.

4

  e. The School administration supported the petition against me returning to work.

  f. When parents made complaints about me, Laverty would set up meetings with the parents and then not inform me what the meeting was about in order for me to be unprepared. Laverty would formally inform all white teachers of the nature of the meetings with the parents.

  g. Laverty would come in and out of my classroom to check on me and my whereabouts. Laverty did not check up on white teachers.

  h. The office staff would take down the sign in sheet before I had the opportunity to sign it. Ms. Hunter, the Vice Principal regularly allowed white teachers to sign in after the sheet was taken down or the administrative staff would sign the teachers in.

  i. White teachers were regularly allowed to leave school grounds during school hours. For example, Mr. Horvath and the Special Education teacher, Nora Bernhardt, would go to Dunkin Donuts to get coffee several times during the course of each day. I was not allowed to leave school grounds.

  j. Laverty unfairly evaluated me while giving good evaluations to white teachers. After I had been out of work for 5 months due to my medical condition, two weeks later, Laverty did an evaluation of me. Laverty chose the class with the most problem kids to observe in an effort to give me a poor evaluation. On information and belief, other white teachers such as Joe Horvath who were underperforming as teachers were given outstanding evaluations.

In the vast majority of instances, the "white teachers" or "white male teachers" are not identified in Plaintiff's affidavit. Thus, the assertions made in the affidavit are not useful because Laverty's alleged conduct towards Plaintiff cannot be compared with his conduct toward white teachers. Plaintiff's naked assertions that she was subjected to a harsher workload or that her homeroom had the most male students with behavioral problems cannot be verified because they are simply statements of opinion. In short, Plaintiff offers no concrete evidence upon which to draw a reasonable inference of race discrimination.

5

In two instances, Plaintiff has identified particular white teachers against whom she would compare herself. In one instance, Plaintiff identifies Joe Horvath, a "white male English teacher" as being the subject of parent complaints for yelling at students. Plaintiff further alleges that "Laverty covered up the situation to protect Horvath." Plainly, this does not constitute admissible evidence giving rise to a genuine issue of material fact necessitating a jury trial. Plaintiff has simply alleged that parent complaints were made against a white teacher and that some parents wanted to meet with the teacher on June 4, 2002. Next, Plaintiff alleges that Laverty did something to cover up this situation. However, Plaintiff fails to provide any explanation as to what Laverty actually did to cover up the situation. Further, it is unclear as to what was being covered up. Based on Plaintiff's allegations, it does not appear that there was anything to cover up. Additionally, even if one were to accept Plaintiff's speculation regarding Mr. Horvath, the relative situations of Plaintiff and Mr. Horvath are vastly different. Plaintiff was subjected to discipline because she encouraged students to resolve their dispute by fighting. Mr. Horvath is alleged to have yelled at students. Even if Plaintiff was subjected to more discipline than Mr. Horvath, Plaintiff's offense was much more serious than Horvath's alleged offense.

In the other instance where Plaintiff actually identifies white teachers, Plaintiff alleges that Mr. Horvath and Ms. Bernhardt went to Dunkin Donuts during the school day. However, Plaintiff does not provide any information as to: how long Mr. Horvath and Ms. Bernhardt would spend off of school grounds while going to Dunkin Donuts; whether they did so during a break or preparation period; or whether Mr. Laverty ever observed them doing so. By contrast,

Plaintiff left the school building without obtaining permission during a teaching period and scattered her students around the school. Again, even if one were to accept Plaintiff's speculation regarding Mr. Horvath and Ms. Bernhardt, any differing treatment is justified by the alleged differing conduct.[3] Consequently, the representations contained in Plaintiff's affidavit are almost entirely conclusory allegations and not the "concrete particulars" required to successfully oppose the motion for summary judgment.

In an apparent effort to establish a genuine issue of material fact on her <u>Monell</u> claim, Plaintiff offers the affidavit of Carolyn P.B. Carter, a former employee in the Hartford Public Schools.[4] Ms. Carter alleges in relevant part:

> 2.    . . . I resigned my position on August 14, 2000 because I was subjected to personal attacks and disrespect from Hartford Public Schools administrators.
>
> 3.    I had been subjected to verbal abuse from my superiors, had received unfair evaluations, and had my office and car vandalized two times. Despite my repeated complaints to administration, nothing was ever done to support me or to remedy the situation.
>
> 4.    A friend of mine is also an older African American female teacher at Weaver High School. She is presently being subjected to unfair and unequal discipline and treatment by the Hartford Public Schools.

Once again, this affidavit is a collection of conclusory allegations devoid of concrete particulars. Other than alleging that her office and car were vandalized two times, Ms. Carter

---

[3] In paragraph 10(c), Plaintiff identifies Executive Secretary Barbara DeJesus as refusing to give pencils to one of Plaintiff's students, supposedly after Plaintiff asked the student to go to the office to request pencils. Such "evidence" is not admissible because it is obvious hearsay—Plaintiff sent the student to the office and was not present when this exchange took place. Further, it does not appear that this exchange bolsters Plaintiff's position. Supposedly, Ms. DeJesus sighed and said "Doesn't she ever sleep?" This does not indicate any racial bias.

[4] It should be noted that Ms. Carter signed her affidavit and noted "all rights reserved" and placed a copyright © symbol next to her signature.

does not specify the acts of "verbal abuse", "unfair evaluations", "personal attacks" and "disrespect" that were committed against her.  Rather, Ms. Carter simply offers her opinion as to her situation.  Further, she offers her hearsay opinion regarding the treatment received by a friend of hers at Weaver High School.  In short, Ms. Carter's affidavit has no value in determining whether the Institutional Defendants maintain a custom, policy or practice of discriminating against older female teachers of African-American descent.

  In her Opposition (at 18-19), Plaintiff explains that the Second Circuit, in Anderson v. Conboy, 156 F.3d 167 n.19 (2d Cir. 1998), noted that Section 1981(c) may be ambiguous as to whether it creates an implied right of action against state actors under Section 1981, thereby, statutorily overruling Jett v. Dallas Independent School District.  In its opinion, the Court noted that the "ambiguity has no bearing on the issue before us" and, thus, did not decide the issue. Anderson, 156 F.3d at 167 n.19.  Plaintiff takes the position that Jett was statutorily overruled and an implied right of action against a state actor is present in Section 1981(c).  Opposition at 19.  However, the weight of district court authority in this circuit is clearly against Plaintiff's position.  Thus, Defendants have previously cited Judge Droney's opinion in Burbank v. Office of the Attorney General of the State of Connecticut, 240 F. Supp. 2d 167, 173-176 (D. Conn.), aff'd., 2003 U.S. App. LEXIS 20109 (2d Cir. Sept. 29, 2003).  Additional research has revealed that Judge Burns has written, "when a person's rights protected by §1981 are violated by a state actor (as opposed to a private person), the aggrieved party has a cause of action pursuant to 42 U.S.C. §1983, not 42 U.S.C. §1981." Coger v. Connecticut Dept. of Admin. Servs., 309 F. Supp. 2d 274, 281 (D. Conn. 2004); see also, Perry v. Metropolitan Suburban Bus Auth., 319 F.

Supp. 2d 338, 342 (E.D.N.Y. 2004); Sullivan v. Newburgh Enlarged School Dist., 281 F. Supp. 2d 689, 708 (S.D.N.Y. 2003) (Section 1983 provides the exclusive remedy for Section 1981 claims of racial discrimination against a school district).  In Roddini v. City Univ. of New York, 2003 U.S. Dist. LEXIS 2549 at **15-18 (S.D.N.Y. 2003), a district court agreed with Judge Droney's opinion in Burbank and found that "the holding in Jett has been interpreted to encompass not only governmental entities but also individuals sued in their individual capacities who are 'state actors.'"  The undersigned did not uncover in his research any district court cases from this circuit that adopted the position that Plaintiff advocates here.  Therefore, summary judgment should enter in favor of the Defendants on Plaintiff's §1981 claim because §1983 is her exclusive remedy.

      Plaintiff also appears to argue that John Laverty is a policy maker whose alleged pattern of reporting "unusual incidents" in a discriminatory manner is sufficient to bind the Institutional Defendants under Monell.  Opposition at 19-20 ("Laverty's attack on Ms. Myers amounts to a policy by a school decision-maker – he was after all responsible for reporting unusual incident reports to Human Resources, and he did so with a vengeance against the Plaintiff by monitoring her behavior with undue scrutiny.").  As stated previously, municipal liability may only attach where the municipal decision maker possesses final policy making authority with respect to the action ordered.  Monell, 436 U.S. at 694; DeLeon v. Little, 981 F. Supp. 728, 740 (D. Conn. 1997).  In this case, Special Act 97-4 [Exhibit F] makes clear that the State Board of Trustees for the Hartford Public Schools was solely responsible for managing the school district and was the final policy maker.  Decisions made by Mr. Laverty regarding the reporting of "unusual

incidents" or what constitutes an "unusual" incident cannot fairly be said to represent municipal policy. Therefore, the Institutional Defendants may not be held liable under §1983 in this case.

Plaintiff argues that John Laverty has waived his claim that the court lacks personal jurisdiction over him due to the court's ruling on the motion to dismiss. Opposition at 21-22. In Transaero, Inc. v. LaFuerza Aerea Boliviana, 162 F.3d 724, 729-730 (2d Cir. 1998), cert. denied, 526 U.S. 1146 (1999), cited by Plaintiff, the court noted that waiver of personal jurisdictional defenses is governed by Rule 12(h) which, "advises a litigant to exercise great diligence in challenging personal jurisdiction . . . or service of process. If he wishes to raise [either] of these defenses he must do so at the time he makes his first significant defensive move . . . ." In this case, Mr. Laverty properly asserted his defense of insufficiency of service of process in a Motion to Dismiss. After the court's mistaken ruling on that issue, Mr. Laverty asserted in his Answer, as the first affirmative defense: "The court lacks personal jurisdiction over this defendant due to insufficiency of service of process." Mr. Laverty has now moved for summary judgment based on insufficiency of service of process. Thus, Mr. Laverty has asserted lack of personal jurisdiction over him at every juncture in this case. Mr. Laverty has not waived this defense. Accordingly, summary judgment should enter in favor of Mr. Laverty based on the court's lack of personal jurisdiction over him due to insufficiency of service of process.

```
                              DEFENDANTS,
                              JOHN LAVERTY AND CITY OF HARTFORD,
                              HARTFORD PUBLIC SCHOOLS


                              By_____
                                 Joseph W. McQuade, ct12121
                                 Diana Garfield, ct05551
                                 Kainen, Escalera & McHale, P.C.
                                 21 Oak Street, Suite 601
                                 Hartford, CT  06106
                                 Telephone (860) 493-0870
                                 Facsimile (860) 493-0871
                                 jmcquade@kemlaw.com
                                 dgarfield@kemlaw.com
                                 Their Attorneys
```

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 15th day of October, 2004, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment was mailed via U.S. Mail, first-class, postage prepaid to:

Francis A. Miniter, Esq.
Christine E. Corriveau, Esq.
Miniter & Associates
100 Wells Street, Suite 1D
Hartford, CT  06103

```
                              _____
                                         Joseph W. McQuade
```

15642