# MARK L. IRVINGS, ESQ.
ARBITRATOR / MEDIATOR

CORPORATION COUNSEL
02 OCT -2 AM 10: 33

24 ELBA STREET
BROOKLINE, MASSACHUSETTS 02446-3159
(617) 734-3278
FAX (617) 738-6946

September 30, 2002

Thomas Ritter, Chairman
Board of Trustees
Hartford Public Schools
153 Market Street
Hartford, CT 06103

Re: Beverly Myers C.G.S.§10-151 Hearing

Dear Chairman Ritter:

On February 8, 2002, Beverly Myers was notified by Superintendent Anthony Amato that her termination as a teacher in the Hartford Public Schools was under consideration. Ms. Myers exercised her right under §10-151 to request the convening of a three member impartial hearing panel. The teacher appointed Nukilwa Taquilaya, the superintendent appointed John Romanow, Esq., and I was appointed by the American Arbitration Association on March 4, 2002.

Under the statute, the teacher and the Board are to share in the cost of the proceeding, including the fees of the third panel member. I stated during the initial pre-hearing conference that I would estimate my fees and both parties would be required to prepay its share. This is done to insure that no appearance of partiality will arise during the course of the proceeding, based on concern about being paid. As I explained, if one side owes money and I rule in favor of that side, the opposing party may perceive that the desire to get paid influenced the decision. If I rule against the side owing money, that party may perceive that the decision was impacted by irritation at not being paid. The way to avoid this problem is to have full payment from both parties ahead of time.

After I submitted a bill based on the parties' projection of the time needed to put on their case, Ms. Myers, through counsel, requested that she be allowed to make installment payments. Since the schedule insured full payment before the commencement of the hearings, I readily acceded to this accommodation. The Board remitted its share, and Ms. Myers faithfully met the payment schedule, so the hearings were initiated. Hearings were held on May 13 and 14; June 10, 24, and 26; and July 15, 2002.

Because the case was progressing much more slowly than counsel had anticipated, five additional dates were scheduled in the fall. Since the prepayment had been exhausted by the completed hearings and related expenses, I sent out another estimated bill in the first week of August covering the minimum amount of time needed to complete the hearings and prepare findings and recommendations. Ms. Myers' counsel did not communicate with me in any way, nor did Ms. Myers or the Board proffer payment. On September 4, more than a week before the next scheduled hearing on September 13, I sent another bill and a reminder that payment would have to be made immediately. The Board remitted its share, but I heard nothing from Ms. Myers or her counsel, Mr. Miniter. When I called his office the day before the hearing and spoke with his associate, I stated that Ms. Myers would have to come to the hearing the next day with payment, or else we would not be able to proceed.

Prior to commencing the hearing on September 13, I reviewed with Mr. Miniter the need for payment to avoid any appearance of partiality. After he consulted with his client, he stated she was unable to pay any portion of the estimated bill at that time, but would expect to pay for that day in a week or two, and would then seek to establish a payment plan. I answered that I could not proceed with the hearings in a creditor status to Ms. Myers, and suggested that he issue a check from his law firm for her share, and he could be reimbursed under a payment plan, which would not compromise his status as an advocate. He demurred, stating his firm has a policy against advancing costs for a client where there is no certainty of repayment. I suggested that Ms. Myers, whose salary check was direct deposited that day, pay for the day immediately, and pay the balance prior to October 29, the next scheduled day. Neither Ms. Myers nor Mr. Miniter found this compromise acceptable.

The hearing panel then went on the record and I explained the issue was not simply financial, wanting to insure that I would be paid, but more fundamentally went to the integrity of the process. When Mr. Miniter said he objected to the rules being changed in mid-course, in that Ms. Myers had been allowed to pay over time previously, I explained that the prior arrangement resulted in Ms. Myers having paid her share in full before the hearings commenced. She had ample notice and opportunity to implement a payment plan after receipt of the August bill, yet she and Mr. Miniter had chosen to ignore the bill and the subsequent reminders. I stressed that the hearing panel could not continue to serve under these conditions.

I am truly sorry that the hearing panel was unable to complete its mission of hearing all relevant evidence and presenting findings of fact and recommendations. We did not feel we had an option of simply holding the matter in abeyance until Ms. Myers paid her share of the proceeding because, as Board Counsel Ann Bird noted, Ms. Myers continues to receive her full salary during the pendency of the proceeding. Further, while the panel members were confident of their ability to fairly weigh the evidence and arguments if the hearings were completed, it was felt the process of debating over payment arrangements had produced the very perception of partiality which prepayment is designed to avoid.

For these reasons, I am providing notice that the impartial hearing panel is now disbanded. We are terminating without issuing any findings of fact or recommendations, since the Board did not have the opportunity to present its entire case, and Ms. Myers did not respond to the allegations.

Sincerely,

*Mark L. Irvings*

Mark L. Irvings

cc: Nukilwa Taquilaya, John Romanow, Ann Bird, Francis Miniter